UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOSHUA FOLKS** | * | **CIVIL ACTION** |
| | * | |
| | * | |
| **VERSUS** | * | |
| | * | **NO.:  3:23-cv-01289-SDD-RLB** |
| **LOUISIANA ATTORNEY GENERAL JEFF** | * | |
| **LANDRY, LOUISIANA DEPARTMENT OF** | * | |
| **PUBLIC SAFETY & CORRECTIONS,** | * | |
| **WARDEN TIM HOOPER, ASSISTANT** | * | **JUDGE: SHELLY D. DICK** |
| **WARDEN FOR HEALTH SERVICES DOE,** | * | |
| **DIRECTOR OF MEDICAL SERVICES** | * | |
| **PAUL TOCE, MEDICAL DEPARTMENT** | * | |
| **DIRECTOR DAN LEFLEUR, ACUTE** | * | **MAGISTRATE JUDGE:** |
| **TREATMENT UNIT DIRECTOR DOE,** | * | **RICHARD L. BOURGEOIS** |
| **ADA ADMINISTRATOR ASHLI OLIVEAUX,** | * | |
| **DR. GAMBLE, OFFICER DOE, and** | * | |
| **EMT DOE** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**STATEMENT OF UNDISPUTED FACTS**

NOW INTO COURT, through undersigned counsel, come Defendants, the Louisiana Department of Public Safety & Corrections, Tim Hooper, Paul Toce, Dan Lafleur, Ashli Oliveaux and Matthew Gamble, who file this statement of undisputed facts in support of their motion for summary judgment.

1. On March 26, 2021, Joshua Folks was arrested in St. Mary's Parish on a felony charge. He was booked into the local facility. Within two days of being in St. Mary's custody, Folks self-harmed twice. St. Mary's Parish requested that Folks be transferred to a DPSC facility due to the self-harm.[1]

---

[1] Exhibit C, Email, bates 105.

2. From March 31, 2021 to November 14, 2022, Joshua Folks was incarcerated at Louisiana State Penitentiary.[2]

3. From March 31, 2021 to August 10, 2022, Folks was a pretrial detainee.[3] On August 10, 2022, Folks signed his Waiver of Final Revocation Hearing, which revoked his parole, making him a DPSC offender.[4]

4. Pursuant to La. R.S. 15:824, an individual who has not been convicted or sentenced to DPSC custody may be housed at a DPSC facility if the local facility determines that it has insufficient facility to house the individual and the transfer is necessary to prevent danger to the individual, staff, inmates or general public. However, La. R.S. 15:824 provides that pre-trial detainees housed at DPSC facility shall be housed separate and apart from offenders sentenced to DPSC custody. DPSC's corresponding policy, IS-B-1, tracks this law and requires that pretrial detainees be housed in a segregated unit at a DPSC facility separate and apart from inmates who have been sentenced to confinement at hard labor.[5]

5. HCP40 is the DPSC policy that governs utilization of restraints pursuant to mental health orders.[6] HCP 40 provides that restraints shall be used only when clinically indicated for management of serious threats of self-harm or as a part of an authorized suicide watch.[7]

6. HCP 30 governs procedures for suicide prevention. There are two levels of suicide watch: standard and extreme.

7. An inmate placed on a standard suicide watch shall be assessed by mental health staff at a minimum of every 24 hours.[8]

---

[2] See Exhibit M.
[3] See Exhibit M.
[4] *Id*.
[5] See Exhibit J, IS-B-1, Section (10)(P)(3).
[6] See Affidavit of Dr. Gamble and Exhibit A; Exhibit A-2, HCP 40.
[7] *Id*.
[8] See Affidavit of Dr. Gamble and Exhibit A; Exhibit A-1, HCP 30.

8. Extreme suicide watch shall be ordered only for the management of an inmate who presents a clear and continual risk of significant self-injurious behavior, which may include behaviors deemed life threatening/suicidal and non-suicidal self-injurious behaviors.[9] Restraints may be ordered where clinically indicated in accordance with HCP 40.[10] Upon initiation of extreme suicide watch, inmates shall be assessed by mental health staff at least every 12 hours.[11] While in restraints, offenders must be let out of the restraints every two hours and the restraints are checked every 15 minutes for circulation.[12]

9. Extreme suicide watch shall be downgraded to a standard suicide watch for a length of time sufficient to assess the inmate's stability. In any implementation of an extreme suicide watch, it is LSP's goal to get the offender to a place of less restriction as soon as possible, based on the offender's intent to self-harm.[13]

10. When Folks arrived at LSP, he was housed in the skilled nursing unit. This was because: (1) Folks was a pre-trial detainee; (2) Folks needed access to 24/7 medical care in his housing area; and (3) so that he would be in a room by himself to minimize his access to foreign objects for self-harm purposes.[14]

11. On April 11, 2021, Folks cut his neck and knees and refused medical treatment and was placed on suicide watch.[15]

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Deposition of Dr. Gamble, pg. 98-99.
[14] Deposition of Dr. Gamble, p. 61-62.
[15] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3356.

12. On April 12, 2021, Folks was seen by a social worker. Folks reported that he planned to cause enough problems that DOC would send him back to parish prison.[16] Extreme suicide watch was continued.

13. April 13, 2021, Folks was seen by a social worker and reported that when he gets off watch he will do something that requires a doctor to fix.[17] Extreme suicide watch was continued.

14. Folks was seen every 12 hours for suicide watch. On April 15, 2021, he was downgraded to a two-point restraint.[18]

15. On April 16, 2021, Folks was seen and continued to make threats of self-harm.[19] He was seen every twelve hours for suicide watch. He made threats of self-harm on April 19[20] and April 20.[21] Folks threatened self-harm is suicide watch was not discontinued.[22] On April 21, Dr. Lavespere met with Folks and discontinued extreme suicide watch and downgraded to a standard suicide watch.[23]

16. On April 23, 2021, Folks was seen by Dr. Gamble. The notes reflect that Folks was well known to Dr. Gamble from prior incarceration period. Dr. Gamble noted that Folks had a long history of non-suicidal self-injuries. He was currently on suicide watch. Folks identified no clear plan of self-harm or harm to others. The plan was to continue psychiatric medications and return to clinic in two weeks.[24]

---

[16] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3350.
[17] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3340.
[18] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3325.
[19] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3314.
[20] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3283 and 3285.
[21] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3279.
[22] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3279.
[23] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3271.
[24] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3241.

17. On April 23, 2021, Folks reported to a social worker that he endorsed suicidal ideations if his demands are not met.[25]

18. On April 24, 2021, Folks was seen and told social worker that he knew he was not coming off of suicide watch because of his behavior.[26]

19. While Folks reported on April 25 that he was doing well, on April 26, 2021 Folks told security that he wanted to cut himself.[27] He remained on suicide watch.[28]

20. On April 28, 2021, Folks told Dr. Lavespere that he would blow up the judge's house if he was not let out of jail.[29] Suicide watch was continued.

21. On April 30, 2021, LSP mental health prepared a Mental Health Plan of Care with Folks. The identified concern was the restrictive housing environment. The goals included compliance with LPS regulations, to demonstrate appropriate activities of daily living is assigned housing area and to demonstrate appropriate boundaries with staff and inmates. The interventions included Folks demonstrating appropriate social skills for living in a less restrictive housing assignment, compliance with medication and remission of symptoms. This plan of care was signed by the clinician, Dr. Gamble and Folks.[30]

22. From May 1 through May 6, 2021, Folks was seen every 24 hours.[31] During this time, Folks advised he was doing well, but that he could stay on watch. Suicide watch discontinued on May 6, 2021.[32]

---

[25] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3242.
[26] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3239.
[27] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3225 and 3222.
[28] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3222.
[29] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3203.
[30] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3191-3193.
[31] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3196, 3179, 3175, 3167, 3160, 3152, 3142, 3146.
[32] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3196, 3179, 3175, 3167, 3160, 3152, 3142, 3146.

23. Folks was seen by Dr. Gamble on May 24, 2021. Dr Gamble noted that Folks experienced legal related anxieties. Dr. Gamble noted no complaints of depression, mania or psychosis. There were no suicidal ideations and no plans for self-harm. The plan was to continue psychiatric medications and to return to clinic in 8 weeks.[33]

24. On June 13, 2021, Folks stabbed himself in the neck and stomach.[34] He was placed on extreme suicide watch.

25. On June 14, 2021, Folks was seen and expressed frustration at being Parish inmate and said he was not meant to be at LSP. Expressed ambivalence towards killing himself. Extreme suicide watch continued.[35]

26. On June 15, 2021, Folks reported to social worker that he had lunch with Warden Hooper and gave him 96 hours to get Folks out of here. Extreme suicide watch was continued.[36]

27. On June 16, 2021, Folks was seen by Dr. Gamble. Dr. Gamble noted that the recent self-harm was in the context of placement seeking because he was moved to TU and he has made it known that he would like to stay on skilled nursing unit. Dr. Gamble noted little improvement despite medication, placements, or attempts to offer therapy. Dr. Gamble noted that Folks' behavior is volitional and often aimed at external incentives, i.e., contingent threats. Dr. Gamble noted cluster B character pathology and there was no indication of disorganized mental illness. Folks had good grooming and hygiene, he was calm and cooperative, his weight was appropriate, and he expressed no plan or intent for self-harm. Plan was to continue psychiatric medications and return to clinic in two weeks.[37]

---

[33] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3139.
[34] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3134.
[35] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3124.
[36] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3113.
[37] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3097.

28. From June 16 through June 27, 2021, Folks was seen every twelve hours for extreme suicide watch. Because of his tendency to eat staples and metal objects, he would remain on extreme watch until wounds heal.[38] During this 11 day time period, Folks told social workers that he "can do what he wants to do,"[39] that he wasn't suicidal "yet,"[40] he would confirm that he was suicidal[41] and would express that he is thinking of various ways to kill himself if he was let off of restraints.[42] He was downgraded to a two-point restraint on June 22, 2021, and advised the same day that he would kill himself if they let him off watch.[43] He was then placed back in four-point restraints.

29. On June 28, 2021, Folks was seen by Dr. Gamble. Folks adamantly denied suicidal ideation and denies plans for self-harm or harm to others. The notes reflect that Dr. Gamble noted that there were no objective signs of disorganized mental illness, no complaints or depression, anxiety, mania or psychosis. Folks verbally contracted for his safety to Dr. Gamble. As such, Dr. Gamble downgraded the suicide watch to a 2-point restraint.[44]

30. On June 30, 2021 Folks was seen by Dr. Gamble again. There were no episodes of self-harm in last 48 hours on two-point restraints. No complaints or depression, anxiety, mania or psychosis. Folks verbally contracted for his safety again and Dr. Gamble downgraded to standard suicide watch.[45]

31. From July 1 through July 6, Folks was seen every 24 hours for standard suicide watch.[46] On July 6, 2021, Folks adamantly denied suicide ideations. Standard suicide watch was

---

[38] Affidavit of Dr. Gamble. Deposition of Dr. Toce, pg. 82-83.
[39] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3077.
[40] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3069.
[41] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3060.
[42] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3044.
[43] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 3040.
[44] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2982.
[45] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2962.
[46] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2955, 2951, 2946, 2933.

discontinued.[47] Less than an hour later, after suicide watch was discontinued, Folks was taken to the ATU due to self-harm.[48] Folks presented angry and verbally abusive to ATU staff. Folks repeatedly punched himself in the stomach and said he was ready to die. Social worker was informed that he shoved metal into his stomach. Folks was again placed on extreme suicide watch, four point restraints.[49] Folks was brought to hospital and underwent surgery.

32. Folks came back from the hospital on July 13, 2021. He was placed on extreme suicide watch and seen every 12 hours. He refused to talk and was angry that he had surgery.[50]

33. Folks was seen by Dr. Gamble on July 14, 20212. Folks reported anxiety related to recent surgery and GI upset. Dr. Gamble added Naltraxone.[51]

34. From July 15 through July 20, 2021, Folks was seen every 12 hours.[52] Folks would report on some occasions that he wanted to stay on extreme watch[53] and even continued to threaten self-harm if he came off of watch.[54] Folks also expressed that he was aware that he was on suicide watch due to extreme impulsive and unpredictable self-injurious behavior in recent past and stated that he understood that staff were trying to keep him safe.[55] Regardless, due to impulsivity of behavior and severity of self-injuries, he was continued on extreme suicide watch as precaution.

---

[47] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2926.
[48] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2924, 2918.
[49] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2918.
[50] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2914.
[51] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2889-2990.
[52] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2891, 2884, 2886, 2876, 2877, 2868,2870, 2857, 2866, 2064, 2066, 2851.
[53] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2893, 2857.
[54] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2064, 2851.
[55] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2870.

35. On July 21, 2021, while on four-point restraint, Folks inserted metal into his body.[56] Folks was taken to the hospital again, where he underwent a small bowel resection, and a colectomy of the transverse colon was performed.[57]

36. Folks was in the hospital for 10 days and returned to LSP on July 31, 2021. He was placed on extreme suicide watch.[58]

37. Folks was seen by Dr. Gamble on August 2, 2021. Dr. Gamble noted that Folks continued to make arguments for less restrictive housing but then makes threats of self-harm.[59] Extreme watch was continued.

38. Between August 3 and August 10, Folks was seen every 12 hours for extreme suicide watch assessment.[60] He was downgraded to standard suicide watch on August 10 and moved to the TU.[61]

39. Folks was seen by Dr. Gamble on August 11, 2021. Folks expressed sadness and anxiety over recent bowel resection.[62]

40. From August 11 through August 17, Folks was seen every 24 hours for standard suicide watch. Each note determined that Folks would remain on watch due to multiple attempts of self-harm and for his safety.[63]

41. On August 17, 2021, Dr, Gamble discontinued suicide watch.[64]

---

[56] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2843, 2841.
[57] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2843, 2841.
[58] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2820.
[59] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2810.
[60] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2799, 2807, 2794, 2797, 2780, 2782, 2769, 2771, 2775, 2760, 2767, 2753, 2755, 2742, 2745, 2739.
[61] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2738.
[62] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2106.
[63] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2099, 2093, 2086, 2080, 2073, 2069.
[64] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2078.

42. Folks was seen by mental health on August 18, August 24, November 11 and January 22 and no significant mental health issues were reported.[65]

43. During his incarceration at LSP during the relevant time period, Folks filed four Administrative Remedy Procedures.[66]

44. On November 9, 2021, Folks filed ARP 2021-2850 wherein he requested mental health records, medical records and photographs related to his self-harm at LSP in connection with the "defense of pending charges" in St. Mary's Parish.[67] The First Step Response stated that the Medical Records Department was processing Folks' request for his records. Folks proceeds to Step two wherein it was found that Folks' request was appropriately addressed.

45. On November 9, 2021, Folks filed ARP 2021-2851 wherein he requested a copy of his rap sheet and parole hold.[68] The request was backlogged pursuant to the ARP process. In the First Step response, LSP provided the detainer letter and list of pending charges. LSP further outlined that Folks' parole violation will depend on the outcome of the pending charges in St. Mary's Parish. Folks did not proceed to the second step.

46. On April 18, 2022, Folks submitted ARP 2022-0859 concerning alleged flooding of his cell and unsanitary conditions from leaks in the roof.[69] He requested that the cell be repaired. On May 14, 2022, Folks voluntarily withdrew his ARP.

47. On July 27, 2022, Folks filed ARP 2022-1428.[70] Folks claimed "cruel and unusual punishment by use of force by restraints" between April and August of 2021. On July 28,

---

[65] Exhibit A, Affidavit of Dr. Gamble; Exhibit A-3, Mental Health records, bates 2067, 2061, 2059, 2058, 2056.
[66] Exhibit D; D1-D4.
[67] See Exhibit D-1.
[68] See Exhibit D2.
[69] See Exhibit D-3.
[70] See Exhibit D-4.

2022, ARP 2022-1428 was rejected because it was filed more than 90 days after the incident.

48. Dr. Gamble, Folks' treating psychiatrist, had previously treated Folks in a prior incarceration period. Dr. Gamble saw Folks at least 12 times between April 2021 and January 2022.[71] In his professional medical judgment, Dr. Gamble felt that the TU cells were the safest place to house Folks given Folks' status as a pre-trial detainee and his intentional and repeated self-harm.[72] The TU cells provided 24-hour camera observation, and included an anterior door such that other offenders could not pass foreign objects to Folks that could provide means for self-harm.[73]

49. Dr. Toce was the medical director at LSP starting in July 2021. Dr. Toce does not provide mental health care. While he generally oversees the mental health department, he does not review or approve mental health treatment plans.[74]

50. Dr. Toce testified that the TU cell where Folks was housed was the "safest, most high visibility, limited access cells right in front of the guard station."[75] The TU cells were the "best chance at getting him not to hurt himself."[76]

51. Dr. Lafleur was employed by LSP only one month during Folks' incarceration, and he left LSP in May 2021.[77]

---

[71] See Affidavit of Dr. Gamble.
[72] Affidavit of Dr. Gamble.
[73] Deposition of Dr. Gamble, pg. 81.
[74] Deposition of Dr. Toce, pg. 28
[75] Deposition of Dr. Toce, pg. 48-49.
[76] Deposition of Dr. Toce, pg. 48-49.
[77] Deposition of Dr. Lafleur, pg. 17, 41.

52. Warden Hooper, the Warden at LSP during the relevant time period, played no role in medical or mental health decisions for particular inmates.[78] Nor would he intervene with a medical professional's decision on how to treat a patient.[79]

53. Ashli Oliveaux started at LSP in March 2022,[80] months after Folks' last time period in restraints. Oliveaux was not involved in Folks' medical or mental health treatment. She did not know Folks during his incarceration, did not have any conversations with him, did not review any ARPs from Folks and did not review any ADA requests.[81]

                                                  Respectfully submitted,

                                                  **LIZ MURRILL**
                                                  **Attorney General**

By:   s/ Andrew Blanchfield
        Andrew Blanchfield, T.A. (#16812)
        Email: ablanchfield@keoghcox.com
        Collin J. LeBlanc (#24519)
        Email: cleblanc@keoghcox.com
        C. Reynolds LeBlanc (#33937)
        Email: rleblanc@keoghcox.com
        Catherine S. Giering (#26495)
        Email: cgiering@keoghcox.com
        Chelsea A. Payne (#35952)
        Email: cpayne@keoghcox.com
        Special Assistant Attorneys General
        701 Main Street (70802)
        Post Office Box 1151
        Baton Rouge, Louisiana 70821
        Telephone: (225) 383-3796
        Facsimile: (225) 343-9612

---

[78] Deposition of Hooper, p. 13.
[79] Deposition of Hooper, p. 49.
[80] Deposition of Oliveaux, p. 13.
[81] Deposition of Oliveaux, p. 10-11.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, which will provide electronic notice of the filing to all CM/ECF participants. I further certify that all parties in this action are represented by CM/ECF participants.

Baton Rouge, Louisiana, this 18th day of July, 2025.

          s/ Andrew Blanchfield
          Andrew Blanchfield