**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Joshua Folks,

        Plaintiff,

        v.

Louisiana Attorney General Jeff Landry, *et al.*,

        Defendants.

Civ. Case No. 23-cv-01289-SDD-RLB

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO PARTIALLY EXCLUDE TESTIMONY OF DR. JOSEPH PENN**

**I.    INTRODUCTION**

Defendants Louisiana Department of Public Safety and Corrections ("LDPSC"), Tim Hooper, Paul Toce, Ashli Oliveaux, Dan LaFleur, and Matthew Gamble (collectively, "Defendants") have proffered Dr. Joseph Penn as an expert witness to opine on Plaintiff Joshua Folks's mental diagnoses and his treatment while incarcerated at the Louisiana State Penitentiary ("LSP").

Two of Dr. Penn's opinions warrant exclusion. First, Dr. Penn's opinion that Mr. Folks does not have a "serious mental illness" ("SMI") is legally irrelevant. Contrary to Dr. Penn's testimony, an SMI diagnosis is not a prerequisite for accommodations under the ADA, nor any other claim at issue in this case. Further, that opinion improperly defers to definitions of SMI found in prison policies and is likely to mislead the jury. Second, Dr. Penn's opinion that Mr. Folks did not require an ADA accommodation is an improper legal conclusion.

These opinions are not helpful to the trier of fact and are inadmissible under Federal Rules of Evidence 402, 403, and 702. The Court should exclude these opinions.

1

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert witness may provide an opinion if the party offering the witness can show:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule was recently "amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is *more likely than not* that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment (emphasis added).

Trial courts act as the "gatekeeper" to ensure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Under the Rules of Evidence and *Daubert*, an expert's testimony must be both reliable *and* relevant. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (internal citations omitted)). The trial court's "screening function" is crucial to ensure that both of these requirements are met. *Roake v. Brumley*, 756 F. Supp. 3d 219, 228-29 (M.D. La. 2024) (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997)). Testimony that will not "assist the trier of fact to understand or determine a fact in issue" should thus be excluded. *Daubert*, 509 U.S. at 592 (internal citation omitted). This includes testimony that relies on an "erroneous legal premise," which, in addition to being unreliable, is unhelpful and risks prejudicing the jury. *Martinez v. Porta*, 601 F. Supp. 2d 865, 866–67 (N.D. Tex. 2009) (citing *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir.1985)).

2

Further, expert witnesses cannot offer legal conclusions. *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law.") (internal citation omitted); *Roake v. Brumley*, 756 F. Supp. 3d 219, 237 (M.D. La. 2024) ("[I]t is well-established that expert witnesses 'may never render conclusions of law.") (internal citation omitted). By offering a legal conclusion, an expert "usurps either the role of the judge by instructing the jury on the applicable law or the role of the jury by applying the law to the facts at issue." *Nagle v. Sheriff Marlin Gusman*, No. 12-1910, 2016 WL 541436, at *5 (E.D. La. Feb. 11, 2016).

Finally, expert testimony may also be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This is true even if the expert testimony is otherwise permissible under Fed. R. Evid. 702. *See Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 928 (M.D. La. 2021) ("[E]ven if the proposed expert testimony satisfies each of the elements set forth in the Rule, the testimony may still be excluded pursuant to the discretionary provisions of Fed. R. Evid. 403.").

## III. ARGUMENT

### A. The Court Should Exclude Dr. Penn's Opinion That Mr. Folks Does Not Have A Serious Mental Illness Because It Is Irrelevant, Conclusory, And Likely To Confuse And Mislead The Jury.

#### 1. Dr. Penn's Opinion That Mr. Folks Does Not Have A Serious Mental Illness Is Irrelevant To Mr. Folk's ADA Claims.

Dr. Penn's opinion that Mr. Folks does not have a "serious mental illness" (SMI) has no relevance to the standards governing Mr. Folks's ADA claims, and should be excluded on that basis. Dr. Penn testifies that Mr. Folks does not have a "serious mental illness ("SMI") necessitating housing accommodations." *See* Exhibit 1 to the Declaration of Kevin K. Si in Support of Motion to Exclude Testimony of Dr. Joseph Penn ("Si Decl.") (Expert Report of Dr. Joseph

Penn Dated May 14, 2025 ("Report")), at 40. In doing so, Dr. Penn inserts an "SMI" determination as a threshold for relief—effectively suggesting that only inmates with a narrow subset of disorders are entitled to protection under the ADA. *See id*. at 40 ("Mr. Folks does not meet the required diagnostic criteria, amount and duration of DSM-5-TR signs and symptoms, or the required level of psychosocial impairments to meet the DSM-5-TR diagnosis for a Serious Mental Illness (SMI), such as schizophrenia, schizoaffective disorder, or any other chronic psychotic disorder.") (emphasis added); *id*. at 42 ("Based on my record review and review of depositions, Mr. Folks has not demonstrated the required prodromal signs, symptoms, or associated deterioration of an individual with any SMI, such as schizoaffective disorder, schizophrenia, or any other chronic psychotic disorder or even an SMI mood disorder such as recurrent and severe major depressive disorder with psychotic features or treatment resistant/refractory bipolar disorder.") (emphasis added); *see also, e.g.*, *id*. at 6, 41, 43–46 (reiterating his belief that only a limited subset of mostly psychotic disorders qualified as SMIs under his understanding of the term). But the definition of SMI as used by Dr. Penn is drawn from institutional classifications, not from any legal definition under the ADA. His use of this category functions as a threshold screen, yet the ADA does not require a plaintiff to meet such a diagnosis to obtain protection.[1]

To bring a claim under the ADA, a plaintiff must show: "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is

---

[1] Although Dr. Penn's testimony that Mr. Folks does not have an SMI is made in support of his conclusion that Mr. Folks is not entitled to an accommodation under the ADA, *see, e.g.*, Report at 40–46, that opinion is no more relevant to Mr. Folks's other claims. Having an SMI is not an element of a claim under the Eighth and Fourteenth Amendments, the Equal Protection Clause, 42 U.S.C. § 1983, or Louisiana state law negligence. Mr. Folks also brings a claim under Section 504 of the Rehabilitation Act, which is interpreted coterminously with the ADA, and thus does not require the plaintiff to show an SMI. *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citations omitted). A qualifying individual under the Act has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C.A. § 12102(1)(A). Department of Justice regulations further define "physical or mental impairment" as including "**[a]ny** mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability." 28 C.F.R. § 35.108(b)(1) (emphasis added). This definition clearly encompasses disorders other than the few which Dr. Penn believes qualify as SMIs. The key inquiry under the ADA is whether, for each individual, the disability "substantially limits" a major life activity, *not* whether it meets a narrow, predetermined list of disorders believed to be serious. *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014) ("ADA regulations generally require an <u>individualized determination</u> of disability based on whether the condition "substantially limits an individual in a major life activity." (emphasis added)); *see also* 29 C.F.R. Pt. 16320(j), App. ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment that person has, but rather on the effect of that impairment on the life of the individual."). Indeed, "a formal diagnosis of a disability is not a prerequisite under the ADA or Rehabilitation Act," much less any one specific type of diagnosis. *A.N. v. Mart Indep. Sch. Dist.*, No. W-13-CV-002, 2013 WL 11762157, at *5 (W.D. Tex. Dec. 23, 2013), *aff'd*, 608 F. App'x 217 (5th Cir. 2015).

To be clear, as a psychiatric expert, Dr. Penn is permitted to testify about what mental health conditions he believes Mr. Folks does or does not suffer from, as Mr. Folks's mental health diagnosis is probative of whether he is a qualifying individual under the ADA. In fact, Dr. Penn testifies that Mr. Folks *does* suffer from certain mental disorders, namely, antisocial and borderline

personality disorders, and impulse control disorder, as he is permitted to do. *See, e.g.*, Report at 38; Si Decl. Ex. 2 (Transcript of the Deposition of Joseph V. Penn Dated June 11, 2025 ("Dep. Tr.")), at 193:15–23.

However, Dr. Penn repeatedly concludes that Mr. Folks's diagnoses do not constitute "serious mental illnesses" warranting accommodations in Mr. Folks's housing and treatment. *See* Report at 41, 43. In Dr. Penn's view, patients with SMIs must demonstrate "paranoia, suspiciousness, and other delusional (fixed false beliefs) and engage in oddities in speech, thoughts, and behaviors." Report at 43. Because Dr. Penn wrongly believes that Mr. Folks was only diagnosed with "borderline and antisocial personality disorder[s]," he testifies that Mr. Folks did not have an SMI warranting accommodations pursuant to his understanding of the ADA. *Id.* at 41; *cf. id.* at 42 (arguing that Mr. Folks's hallucinations were not indicative of an SMI, as they were instead "most likely attributable to Mr. Folks borderline and antisocial personality disorder diagnoses.").

But there is no basis in law for categorically excluding individuals who do not exhibit these symptoms from protection under the ADA. In fact, courts have ruled to the contrary. *See Censke v. Cnty. of Marquette*, No. 2:11-CV-119, 2013 WL 4499265, at *6 (W.D. Mich. Aug. 20, 2013) (noting that "persons suffering from a personality disorder may also be considered disabled" to deny summary judgment on Title II ADA claim); *see also Heineman v. Keller*, No. 2:23-CV-00448-JAD-MDC, 2024 WL 4624838, at *2 (D. Nev. Oct. 30, 2024) ("Mental impairments that might ordinarily be considered a disability under the ADA include schizophrenia and personality disorders").[2]

---

[2] There is similarly no basis for doing so under the Eighth Amendment. *See Ruiz v. Estelle*, 503 F. Supp. 1265, 1338 (S.D. Tex. 1980), *aff'd in part, rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir. 1982) (ordering various changes in the provision of psychiatric care in a state corrections system, including to inmates with personality disorders, for compliance with the Eighth

Because the presence or absence of an SMI has no bearing on whether Mr. Folks is protected under the ADA, Dr. Penn's opinion on that issue is irrelevant and should be excluded under Federal Rules of Evidence 402 and 702, as well as the *Daubert* standard.

### 2. Dr. Penn's Opinion Is Conclusory, Based on Deference to Prison Policy, and Reflects a Methodology Previously Rejected by a Federal Court.

Dr. Penn's opinion that Mr. Folks does not have a "serious mental illness" simply parrots the LDPSC and LSP definitions of SMI, which are tailored to internal housing classifications. *See* Report at 9; Si Decl. Ex. 3 (LDPSC and LSP Policies Regarding SMI Inmates). These policies limit the SMI designation to a small set of diagnoses for administrative purposes and have no relevance to the legal standards under the ADA. *See* Si Decl. Ex. 3.

Relying on such institutional definitions is not just irrelevant—it is methodologically flawed. Courts have repeatedly emphasized that expert testimony must be grounded in the knowledge and methods of the expert's own field. *See* Fed. R. Evid. 702. But rather than apply objective psychiatric criteria or accepted diagnostic frameworks, Dr. Penn simply deferred to the prison's internal definitions. This is the same approach he took to defining the standard of medical and psychiatric care, which he testified was: "whatever the policy the Louisiana Department of Corrections promulgated, that's what should have happened." Dep. Tr. at 226:1–9.

Compounding this problem, Dr. Penn is not qualified to interpret or apply those correctional policies. He conceded that he is not an expert in custody classifications or inmate housing systems. See Dep. Tr. at 75:11–16, 79:7–13. Courts have excluded psychiatric experts for

---

Amendment); *Coleman v. Newsom*, No. 24-3707, 2024 WL 5629534, at *1 (9th Cir. Apr. 15, 2025) (affirming district court's order requiring treatment for a class of inmates with personality disorders under the Eighth Amendment); *Young v. Choinski*, 15 F. Supp. 3d 172, 186 (D. Conn. 2014) (denying summary judgment on claims that prison officials were deliberately indifferent to the mental health needs of a prisoner with antisocial and borderline personality disorders); *Gay v. Chandra*, 652 F. Supp. 2d 959, 974–76 (S.D. Ill. 2009) (same).

stepping outside their area of expertise in similar ways. See *Rushing v. Yeargain*, No. 19-653-JWD-SDJ, 2022 WL 4545612, at \*8 (M.D. La. June 10, 2022) (psychiatrist not qualified to opine on the application of workplace policies). His reliance on policy frameworks he is not qualified to interpret further undermines the reliability of his opinion.

This same flawed methodology—uncritical reliance on institutional standards—has led at least one other federal court to reject Dr. Penn's expert testimony in *Jensen v. Shinn*, 609 F. Supp. 3d 789 (D. Ariz. 2022), *amended*, No. CV-12-00601, 2022 WL 2910835 (D. Ariz. July 18, 2022). There, the court found that Dr. Penn "spoke entirely in generalities," adopted the prison's policy positions wholesale, and failed to apply any objective clinical standard. *Id.* at 853, 862. For example, in *Jensen*, Dr. Penn testified that the adequacy of mental health staffing was established simply because the prison decided it was adequate, a conclusion the court described as "circular logic." *Id.* at 862. The court ultimately found his testimony was not credible and methodologically unreliable. *See id.* at 851, 853, 858, 863.

Dr. Penn's opinion in this case suffers from the same flaws. It lacks a reliable foundation, falls outside the scope of his expertise, and mirrors the same deference to institutional authority that led to exclusion in *Jensen*. It should be excluded here under Rule 702 and the *Daubert* standard for the same reasons.

### 3.     Dr. Penn's Opinion Should Be Excluded Because It Risks Confusing and Misleading the Jury.

Dr. Penn's opinion that Mr. Folks did not have a "serious mental illness" is not only irrelevant but affirmatively risks misleading the jury and confusing the applicable legal standards. He bases his opinion on the belief that Mr. Folks's diagnoses, such as personality and impulse control disorders, fall outside of the narrow definition of SMI used in LDPSC and LSP institutional policies. That approach reflects a fundamental misunderstanding of the law. As discussed above,

8

whether a particular diagnosis meets an internal prison policy threshold for special housing is not the standard under the ADA.

By importing an irrelevant and more restrictive standard into the analysis, Dr. Penn invites the jury to apply the wrong legal test to Mr. Folks's claims. *Cf. Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 341 (5th Cir. 1999) (affirming district court's exclusion of a scientific expert's testimony as irrelevant where the expert failed to apply the correct legal standard under state law). This kind of testimony carries a high risk of jury confusion as it cloaks incorrect legal assumptions in the authority of an expert opinion. *See Martinez v. Porta*, 601 F. Supp. 2d 865, 866–67 (N.D. Tex. 2009) (excluding expert testimony that relied on an "erroneous legal premise" and acknowledging the potential risk of prejudicing the jury). That risk significantly outweighs any minimal probative value, particularly given that legal standards and not prison policies govern whether a disability exists under federal law.

Courts routinely exclude such testimony under Rule 403 to prevent exactly this kind of confusion. *See, e.g.*, *KB Home v. Antares Homes, Ltd.*, No. CIV.A.3-04-CV-1031-L, 2007 WL 1893370, at *9 (N.D. Tex. June 28, 2007) (noting that the court previously excluded expert witness testimony on the basis that using an incorrect legal standard would "confuse and mislead the jury"); *Martinez*, 601 F. Supp. at 867. Because Dr. Penn's SMI opinion is based on the wrong standard and misstates the applicable legal framework, it should be excluded under Rule 403.

**B.      The Court Should Exclude Dr. Penn's Opinion That Mr. Folks Was Not Entitled To An ADA Accommodation Because It Is An Improper Legal Conclusion.**

Dr. Penn states in his report that, "LSP did not fail to provide reasonable accommodations under the Americans with Disabilities Act (ADA) for a Serious Mental Illness (SMI)." Report at 35; *see also id*. at 38–40. As noted above, to the extent that Dr. Penn bases this conclusion on Mr. Folks's alleged lack of an SMI, he relies on a misunderstanding of the ADA and opines on issues

9

irrelevant to the case. But even setting that aside, Dr. Penn's broader conclusion that Mr. Folks was not entitled to an ADA accommodation is itself inadmissible.

Whether a patient is entitled to ADA accommodations is a conclusion of law, and thus Dr. Penn's testimony regarding Mr. Folks's entitlement to ADA accommodations should be stricken as an impermissible legal conclusion. *See Goodman*, 571 F.3d at 399. Courts in the Fifth Circuit have repeatedly stricken conclusions regarding the applicability of the ADA by medical experts as impermissible testimony. *See, e.g.*, *S.F. v. Denton Cnty., Tex.*, No. 4:23-CV-00864-ALM-BD, 2025 WL 1509154, at *5 (E.D. Tex. May 27, 2025) (agreeing with the plaintiff that the defendants' expert "is not qualified to testify as to his legal conclusions about whether illicit substance abuse removes ADA protection," regardless of his stated experience dealing with patients needing ADA accommodations and with ADA policy and procedure); *EEOC v. Modern Group, Ltd.*, 725 F. Supp. 3d 644, 690-91 (E.D. Tex. 2024) (striking expert opinions regarding "whether the ADA requires individualized assessments" and how an employer's duty under the ADA may be affected as impermissible legal conclusions).

Dr. Penn's opinion regarding Mr. Folks's legal entitlement to an ADA accommodation seeks to "usurp[] either the role of the judge by instructing the jury on the applicable law or the role of the jury by applying the law to the facts at issue." *Nagle*, 2016 WL 541436, at *5. His role is to provide scientifically rigorous medical opinions based on the facts, not to directly tell the jury how to apply the law to those facts. To allow otherwise would risk misleading juries and muddying the waters with misinformed legal opinions, in violation of Fed. R. Evid. 403. *See Lee v. Jackson Cnty. Miss.*, Civ. No. 1:13-cv-441-HSO-RHW, 2017 WL 53952, at *7 (S.D. Miss. 2017) (finding that even if legal conclusions by experts "were somehow otherwise admissible, their probative value is substantially outweighed by the dangers of confusing the issues and misleading the jury").

Because Dr. Penn offers nothing more than a legal opinion regarding Mr. Folks's rights under the ADA, which is a matter solely for the Court and the jury to decide, his testimony must be excluded under Rules 702 and 403, as well as the *Daubert* standard.

## IV.     CONCLUSION

For the reasons stated above, the Court should exclude Dr. Penn's opinions which are irrelevant, will not assist the jury, and invade the province of the Court.

Dated: July 18, 2025

Respectfully submitted,

*/s/ Kenneth D. Beale*
Kenneth D. Beale
Emanuel Powell III
JENNER & BLOCK LLP
1099 New York Ave NW # 900
Washington, DC 20001
Telephone: (202) 639-6000
KBeale@jenner.com
EPowell@jenner.com

Elizabeth A. Edmondson
Sarah A. Purtill
Julius J. Mitchell
Kevin K. Si
Shailee Diwanji Sharma (*pro hac vice forthcoming*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: (212) 891-1600
EEdmondson@jenner.com
SPurtill@jenner.com
Julius.Mitchell@jenner.com
KSi@jenner.com
SSharma@jenner.com

William Most (La. Bar No. 36914)
Caroline Gabriel (La. Bar No. 38224)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Telephone: (504) 509-5023
Email: williammost@gmail.com

11

12

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2025 a true and correct copy of the foregoing was filed on the Court's CM/ECF document filing system, which will cause electronic notification of the filing to be sent to all counsel of record filed with the Clerk of the Court.

*/s/ Kenneth D. Beale*
Kenneth D. Beale

13