UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSHUA FOLKS | * | CIVIL ACTION |
| | * | |
| | * | |
| VERSUS | * | |
| | * | NO.:  3:23-cv-01289-SDD-RLB |
| LOUISIANA ATTORNEY GENERAL JEFF | * | |
| LANDRY, LOUISIANA DEPARTMENT OF | * | |
| PUBLIC SAFETY & CORRECTIONS, | * | |
| WARDEN TIM HOOPER, ASSISTANT | * | JUDGE: SHELLY D. DICK |
| WARDEN FOR HEALTH SERVICES DOE, | * | |
| DIRECTOR OF MEDICAL SERVICES | * | |
| PAUL TOCE, MEDICAL DEPARTMENT | * | |
| DIRECTOR DAN LEFLEUR, ACUTE | * | MAGISTRATE JUDGE: |
| TREATMENT UNIT DIRECTOR DOE, | * | RICHARD L. BOURGEOIS |
| ADA ADMINISTRATOR ASHLI OLIVEAUX, | * | |
| DR. GAMBLE, OFFICER DOE, and | * | |
| EMT DOE | * | |

**************************************************************************

MEMORANDUM OPPOSITION TO MOTION TO PARTIALLY EXCLUDE
TESTIMONY OF DR. JOSEPH PENN

NOW INTO COURT, through undersigned counsel, come Defendants, the Louisiana Department of Public Safety & Corrections, Tim Hooper, Paul Toce, Dan Lafleur, Ashli Oliveaux and Matthew Gamble, who file this memorandum in opposition to Plaintiff's Motion to Partially Exclude Testimony of Dr. Joseph Penn (R.Doc. 56). Plaintiff seeks to exclude Dr. Penn's opinions regarding Plaintiff's mental health diagnosis, an issue that Plaintiff squarely put before this Court.

Dr. Penn's opinions regarding whether Plaintiff has a "serious mental illness" that required movement to another cell or another facility are made in direct response to Plaintiff's allegations under §1983 and Plaintiff's expert's opinions. These opinions are relevant, directly contradict Plaintiff's claims, and would not confuse the jury. Under Federal Rules of Evidence 702, these opinions should not be excluded.

I.      **Factual Background**

Plaintiff, Joshua Folks, brings claims under 28 USC §1983, the ADA/RA and state law claims arising from his mental health treatment while incarcerated at Louisiana State Penitentiary. In paragraph 1 of Plaintiff's Amended Complaint, Plaintiff alleges that he has a "serious mental illness" that causes him to compulsively self-harm.[1] Defendants dispute plaintiff's allegations, as set forth in their Motion for Summary Judgment.[2] The lengthy factual background was set forth in Defendants' Memorandum in Support of its Motion for Summary Judgment (R.Doc.55-1), which in incorporated herein.

Plaintiff retained Dr. Glindmeyer as an expert in this case. In response to Plaintiff's allegations, and Dr. Glindmeyer's opinions, Defendants retained Dr. Penn, a triple board-certified psychiatric physician and clinical professor with vast experience with correctional health care.[3]

Plaintiff filed this Motion to Partially Exclude Testimony of Dr. Penn (R.Doc. 56). Plaintiff's motion does not seek to exclude Dr. Penn as an expert in this case. Nor does Plaintiff assert that Dr. Penn is not qualified to render opinions on Plaintiff's mental health diagnosis, or the treatment received while by LSP.   Instead, Plaintiff seeks to exclude two opinions of Dr. Penn: (1) that Plaintiff does not have a "serious mental illness;" and (2) that Folks did not require an accommodation. Plaintiff merely cites to opinions found in Dr. Penn's expert report, without providing the context for these opinions. Surprisingly, in the nearly seven-hour deposition, Plaintiffs did not question Dr. Penn on these two opinions. Instead, Plaintiff improperly asserts that Dr. Penn's opinions on "serious mental illness" relate to Plaintiff's claims under the ADA.  In fact,

---

[1] R.Doc. 13, para 1.
[2] R.Doc. 55.
[3] Expert Report of Dr. Penn, R.Doc. 62.

Dr. Penn's opinions regarding "serious mental illness" and housing/facility placement are in direct response to Plaintiff's allegations and Dr. Glindmeyer's opinion that Plaintiff should have been provided a different housing placement based on Plaintiff's mental health diagnosis. Plaintiff's motion should be denied.

## II.      Law and Argument

### 1.  Standard under Federal Rules of Evidence 702

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>      (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>      (b) the testimony is based on sufficient facts or data;
>      (c) the testimony is the product of reliable principles and methods; and
>      (d) the expert has reliably applied the principles and methods to the facts of the case.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: (1) qualifications of the expert witness; (2) relevance of the testimony; and (3) reliability of the principles and methodology upon which the testimony is based. *Gage v. Jenkins*, No. CV 13-0638-SDD-EWD, 2017 WL 2190064, at *2 (M.D. La. May 18, 2017)

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Electronics America, Inc.,* 277 F.R.D. 161, 165 (E.D. La. 2011), citing Fed. R. Evid. 702 Advisory Committee Note (2000

amend.). Further, as explained in *Scordill v. Louisville Ladder Group., L.L.C.,* 2003 WL 22427981

(E.D. La. Oct. 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the Daubert Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" (internal citations omitted).

The Supreme Court has also recognized that not all expert opinion testimony can be

measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the

factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the

nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho Tire*

*Co., Ltd. v. Carmichael*, supra, 526 U.S. at 150. The Fifth Circuit has concluded that certain "soft

sciences" involve "necessarily diminished methodological precision" when compared to other

scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115

(5th Cir. 2006):

In such instances, other indicia of reliability are considered under *Daubert*, including

professional experience, education, training, and observations. Because there are areas of

expertise, such as the "social sciences in which the research, theories and opinions cannot have the

exactness of hard science methodologies", trial judges are given broad discretion to determine

"whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular

case." *Id*. at 1123 (internal citations omitted).

**2. Dr. Penn's opinions regarding whether Plaintiff has a "serious mental illness" are relevant and in direct response to Plaintiff's allegations and Dr. Glindmeyer's opinions**

Plaintiff's motion is based on the mistaken assumption that Dr. Penn's opinions regarding the serious mental illness diagnosis relate to Plaintiff's claim under the ADA. In reality, this opinion directly relates to Plaintiff's claim under 28 USC §1983 and conditions of confinement.

Under his §1983 claim, Plaintiff alleges that his conditions of confinement provoked his self-harming behavior. Plaintiff alleges that Defendants could have transferred him to a different cell at LSP, "transferred him to a different facility or institution, or placed him on home confinement or supervised release." R. Doc. 13, para. 123. Plaintiff's expert, Dr. Glindmeyer opines that Plaintiff experienced exacerbation of mental health issues and that the restrictive housing caused that exacerbation. Further, Dr. Glindmeyer opines that DPSC should have reviewed Plaintiff's level of care and transferred him to a different unit or to a different facility, such as Elayn Hunt.[4]

Dr. Penn's opinions regarding whether or not Plaintiff has an SMI are in direct response to Plaintiff's allegations and Dr. Glindmeyer's opinions that his placement in restrictive housing caused an exacerbation of his mental health and that he should have been moved to a different housing location. Dr. Penn opines that in his professional opinion, if there is a patient with "serious mental illness," such as schizophrenia, and that patient cannot perform their activities of daily living, those patients would be moved to a higher level of care, i.e., a transfer to a different facility such as Elayn Hunt.[5]

Because Plaintiff did not have a serious mental illness, and could perform his activities of daily living, in Dr. Penn's opinion, there was no need to move Plaintiff to a higher level of care or

---

[4] R.Doc. 61-4, Sealed Exhibit, Glindmeyer report, p. 46
[5] Exhibit 1, Dr. Penn Deposition, p. 236-237.

a separate facility, such as Elayn Hunt.[6] Plaintiff's allegations and Dr. Glindmeyer's opinions squarely placed SMI (Plaintiff's mental health condition) at issue in this case.

Plaintiff alleges that based on Plaintiff's "serious mental illness" that caused him to self-harm, DPSC should have moved him to a different cell or a different facility. R.Doc. 13. Para. 1; 123. Dr. Penn opines that Plaintiff did not have a serious mental illness that would have required DPSC to move Plaintiff to a different cell in LSP or a different facility. These opinions are relevant and in direct response to Plaintiff's allegations and expert opinions.

Further, Plaintiff makes unsupported arguments that Dr. Penn's opinions regarding whether Folks has an SMI are unreliable because Dr. Penn simply relies on LSP's policies definitions of SMI. However, Dr. Penn opines that Plaintiff "does not meet the required diagnostic criteria, amount and duration of DSM-5-TR signs and symptoms, or the required level of psychosocial impairments to meet the DSM-5-TR diagnosis for a Serious Mental Illness (SMI), such as schizophrenia, schizoaffective disorder, or any other chronic psychotic disorder."[7] Contrary to Plaintiff's misguided assertions that Dr. Penn solely relied on LSP's policies for the definition of SMI, Dr. Penn made a specific finding that Plaintiff did not meet the DSM-5-TR diagnosis for SMI.[8] Plaintiff fails to cite to any statement in Dr. Penn's report or any testimony to supports this conclusory statement. At no point does Dr. Penn state that he deferred to LSP's policy definition of SMI for his diagnostic conclusion that Folks does not have an SMI. Quite the opposite, Dr. Penn specifically found that Plaintiff did not meet the DSM-5-TR diagnosis for SMI.[9] This opinion is based on Dr. Penn's qualifications, upon sound methodology and is therefore reliable.

---

[6] Exhibit 1, Deposition of Dr. Penn, p. 236.
[7] Expert Report of Dr. Penn, R.Doc. 62, p. 41.
[8] *Id*.
[9] Further, Plaintiff's counsel did not even question Dr. Penn regarding his opinion that Folks did not have an SMI or the basis for that opinion.

### 3. Defendants will not elicit testimony that amounts to legal conclusions under the ADA

Federal Rule of Evidence 704 provides that an expert opinion is not objectionable just because it embraces an ultimate issue. Further, Rule 702 authorizes experts to provide a "dissertation or exposition" of "principles relevant to the case, leaving to the trier of fact to apply them to the facts" (Advisory Committee Notes). The "touchstone for distinguishing opinion on ultimate issues and impermissible legal conclusions is helpfulness to the [factfinder]." *Accresa Health LLC v. Hint Health Inc.*, 2020 WL 6325731, at \*7 (E.D. Tex. Feb. 26, 2020). The "task for the court is to ask whether the expert's opinion bears on some factual inquiry or whether [it bears] solely on the legal conclusions that are urged." *Olivier v. Exxon Mobil Corp.*, 596 F. Supp. 3d 606, 611 (M.D. La. 2022).

Defendants do not intend to elicit testimony from Dr. Penn that would amount to legal conclusions. Plaintiff's expert opines that because of Plaintiff's mental health status, he should have been transferred to another facility. Plaintiff has therefore placed his mental health condition and housing placement at issue in this litigation. As such, Defendants are entitled to set forth Dr. Penn's opinion that Plaintiff did not have a serious mental illness that would necessitate, in his experience, an upgrade in his level of care that would have required moving him to another facility. While Dr. Penn refers to this in his report as housing "accommodation," Defendants do not intend to elicit testimony from Dr. Penn on any specific element of the ADA. However, his opinions that Plaintiff's mental health condition did not necessitate a housing assignment change or a move to another facility are not legal conclusions. In fact, these opinions are in direct response to Dr. Glindmeyer's opinions. The trier of fact can assess these two conflicting opinions in deciding the ultimate issues in this case. Plaintiff's motion should be denied.

In any case, Plaintiff's purported concern about legal opinions being offered is premature and unfounded. Defendants recognize the well-established limits of expert testimony and do not intend to rely upon Dr. Penn to offer any legal conclusions. If Plaintiff believes any testimony elicited at trial transgresses those limits, they should raise their objections at that time. See Hunters Run Gun Club, LLC v. Baker, 2019 WL 2516876, at *2 (M.D. La. June18, 2019).

**III.    Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court deny, in its entirety, Plaintiff's motion to partially exclude testimony of Dr. Penn.

Respectfully submitted,

**LIZ MURRILL**
**Attorney General**

By:    s/ Andrew Blanchfield
Andrew Blanchfield, T.A. (#16812)
Email: ablanchfield@keoghcox.com
Collin J. LeBlanc (#24519)
Email: cleblanc@keoghcox.com
C. Reynolds LeBlanc (#33937)
Email: rleblanc@keoghcox.com
Catherine S. Giering (#26495)
Email: cgiering@keoghcox.com
Chelsea A. Payne (#35952)
Email: cpayne@keoghcox.com
Special Assistant Attorneys General
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, Louisiana 70821
Telephone: (225) 383-3796
Facsimile: (225) 343-9612

9

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court by utilizing

the CM/ECF system, which will provide electronic notice of the filing to all CM/ECF participants.

I further certify that all parties in this action are represented by CM/ECF participants.

Baton Rouge, Louisiana, this 15$^h$ day of August, 2025.


       s/ Andrew Blanchfield
        Andrew Blanchfield