# EXHIBIT 9

Sharita Spears  30(b)(6)
December 10, 2024

UNITED STATES DISTRICT COURT

THE MIDDLE DISTRICT OF LOUISIANA


JOSHUA FOLKS,                    )

       Plaintiff,             )

   vs.                          )  23-cv-01289

LOUISIANA ATTORNEY GENERAL       )

JEFF LANDRY, ET AL.,             )

       Defendants.            )


    The 30(b)(6) videotaped video teleconference deposition of SHARITA SPEARS, called for examination, taken pursuant to the Federal Rules of Civil Procedure for the United States District Courts, taken before KAREN L. PILEGGI, CSR No. 84-3404, a Notary Public, within and for the County of DuPage, State of Illinois, Certified Shorthand Reporter within and for the State of Illinois, Registered Merit Reporter, at Chicago, Illinois, December 10, 2024, at the approximate hour of 3:03 PM.

```
 1   PRESENT VIA ZOOM:

 2        JENNER & BLOCK, LLP,

 3        1099 New York Avenue NW, Suite 900,

 4        Washington, DC  20001,

 5        MS. SARAH PURTILL,

 6        spurtill@jenner.com,

 7        MR. JULIUS MITCHELL,

 8        julius.mitchell@jenner.com,

 9             appeared on behalf of the Plaintiff;

10

11        KEOGH, COX & WILSON, LTD.,

12        701 Main Street,

13        Baton Rouge, Louisiana  70802,

14        MR. ANDREW BLANCHFIELD,

15        ablanchfield@keoghcox.com,

16        MS. CHELSEA A. PAYNE,

17        cpayne@keoghcox.com,

18             appeared on behalf of the Defendant.

19

20   ALSO PRESENT:  Molly Oberstein-Allen

21                  Luke Platzer

22   VIDEOGRAPHER:  Lauren Luzod

23   REPORTED BY:  Karen Pileggi, CSR, RPR, RMR, CRR,

24                  CSR License No. 84-3404
```

Sharita Spears  30(b)(6)
December 10, 2024

```
1                      EXAMINATION

2                                      Page  Line

3   SHARITA SPEARS

4   Examination by Ms. Purtill            5      6

5

6

7                  E X H I B I T S

8   Deposition Exhibit                    Page  Line

9   Exhibit No. 1........................ 31     12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
1        THE VIDEOGRAPHER:  We are now on the record on

2   December the 10th, 2024 at 21:03 -- that's Universal

3   Time Code -- for the purpose of creating a

4   witness-only video recording.  The witness is being

5   spotlighted or locked on all video screens.

6            This is the video deposition 30(b)(6) of

7   corporate representative Sharita Spears being taken

8   in the matter of Joshua Folks versus Louisiana

9   Attorney General Jeff Landry, et al., in the United

10  States District Court for the Middle District of

11  Louisiana, Case No. 23-CV-01289.

12            My name is Lauren Luzod.  I'm the video

13  technician on behalf of U.S. Legal Support.  The

14  court reporter is Karen Pileggi also on behalf of

15  U.S. Legal Support.

16            Will counsel state their appearances for

17  the record and the court reporter swear in the

18  witness.

19        MS. PURTILL:  Hi, there.  This is Sarah Purtill

20  for the plaintiff, Joshua Folks, in this matter.

21  I'm from the law firm Jenner & Block.  I'm joined

22  here by my colleagues Luke Platzer and

23  Julius Mitchell.

24        MR. BLANCHFIELD:  Andrew Blanchfield on behalf
```

Sharita Spears  30(b)(6)
December 10, 2024

1   of the defendants.

2                    (Witness duly sworn.)

3                       SHARITA SPEARS,

4   called as the witness herein, having been first duly

5   sworn, was examined and testified as follows:

6                       EXAMINATION

7   BY MS. PURTILL:

8        Q.    Hi, Ms. Spears.  I'm Sarah Purtill, an

9   attorney with Jenner & Block.  I represent the

10  plaintiff in this matter, Joshua Folks.  Could you

11  please state your full name for me.

12       A.    Sharita Spears.

13       Q.    Are you currently employed at the

14  Louisiana Department of Public Safety and

15  Corrections?

16       A.    Yes.

17       Q.    For convenience throughout this

18  deposition, I'm going to refer to the Louisiana

19  Department of Public Safety and Corrections as the

20  department, but please let me know if you have any

21  confusion at any time over what entity I'm speaking

22  about.

23            What's your current job title at the

24  department?

Sharita Spears  30(b)(6)
December 10, 2024

```
 1        A.    Deputy assistant secretary.

 2        Q.    How long have you been in that role?

 3        A.    Since December of 2020.

 4        Q.    How long have you been employed by the

 5   department, in total?

 6        A.    Approximately 17 1/2 years.

 7        Q.    What other roles have you had at the

 8   department?

 9        A.    An administrative coordinator position;

10   ARDC Specialist 1, 2 and 3 position; ARDC

11   supervisor; ARDC manager.

12        Q.    What is ARDC an abbreviation for, if

13   anything?

14        A.    Adult reception and diagnostic center.

15        Q.    Ms. Spears, have you ever been deposed?

16        A.    Yes.

17        Q.    How many times have you been deposed?

18        A.    I think about three, maybe.  Maybe more.

19   I'm not sure.

20        Q.    Have you ever testified as a 30(b)(6)

21   corporate representative on behalf of the

22   department?

23        A.    I think so, yes.

24        Q.    Have you ever testified in connection
```

Sharita Spears  30(b)(6)
December 10, 2024

1  with your job at the department?

2      A.    Yes.

3      Q.    All three times that you were deposed,

4  approximately, were those all in your capacity for

5  the department?

6      A.    Yes.

7      Q.    You understand you're here today

8  testifying on behalf of the department?

9      A.    Yes.

10     Q.    It sounds like you've been deposed before

11 and some of these ground rules might be very

12 familiar to you, but I just want to recap them so

13 that we both are on the same page in terms of the

14 ground rules for today's deposition.

15          First, you understand that you're under

16 oath and obligated to tell the truth, right?

17     A.    Yes.

18     Q.    Is there any reason you can't give honest

19 and accurate testimony today?

20     A.    No.

21     Q.    Our court reporter here is taking down

22 everything that we discuss and in order to do that,

23 she needs audible responses.

24          So please do your best to answer

Sharita Spears  30(b)(6)
December 10, 2024

```
 1  questions with a yes or no, as you have been doing,

 2  instead of uh-huh or head nods or nonverbal

 3  gestures.

 4          It's also -- in order for us to have a

 5  clear record, it's also important that we not speak

 6  over each other.  Please let me finish asking a

 7  question before you begin to respond, and I will

 8  likewise wait for you to finish responding to a

 9  question before I ask my next question.  Sometimes

10  it can be a little bit tricky over Zoom, but we will

11  do our best.

12          If any question that I ask you is unclear

13  to you, please let me know and I'm happy to

14  rephrase, I'm happy to clarify.

15          If you don't ask me to rephrase my

16  question and you go ahead and answer my question,

17  I'm going to assume that you understood it.  Okay?

18      A.   Okay.

19      Q.   For convenience, I'm going to refer to

20  the Louisiana State Penitentiary at Angola as LSP.

21  Does that work for you?

22      A.   Yes.

23      Q.   Again, any abbreviation, if you're not

24  sure which entity I'm talking about, please let me
```

Sharita Spears   30(b)(6)
December 10, 2024

 1  know and I'm happy to clarify.

 2              I will also refer to the Americans with

 3  Disabilities Act, which is codified beginning at 42

 4  USC Section 12101, as the ADA, okay?

 5      A.    Okay.

 6      Q.    Your counsel might object to some of my

 7  questions, but please go ahead and answer unless he

 8  instructs you not to do so.  Do you understand?

 9      A.    Yes.

10      Q.    Finally, while I really hope that we are

11  going to zoom through your testimony here, we will

12  take a break every hour or so, if we are running

13  that long.

14              But if you need a break sooner than I

15  tell everyone we're taking a break, please feel free

16  to ask and we will go ahead and take a break sooner.

17              I just would ask that you finish

18  answering any question that I have pending before we

19  go on break.

20              Do you have any questions about anything

21  I've just said or anything else before we get

22  started?

23      A.    No.

24      Q.    Is it your understanding that you have

Sharita Spears  30(b)(6)
December 10, 2024

1  been designated to testify on behalf of the

2  department regarding requests for accommodations

3  under the ADA?

4       A.    Yes.

5       Q.    Are you familiar with the ADA?

6       A.    Yes.

7       Q.    What is your understanding of what the

8  ADA is?

9       A.    The ADA, or the Americans with

10 Disabilities Act, is a law that was created to

11 protect persons with disabilities to ensure equal

12 access to programs, services and activities.

13      Q.    Prior to this litigation, were you aware

14 of the ADA?

15      A.    Yes.

16      Q.    Did you encounter the ADA in connection

17 with your job responsibilities prior to this

18 litigation?

19      A.    Yes.

20      Q.    Does your role involve oversight of the

21 department's compliance with the ADA?

22      A.    Yes.

23      Q.    How did you prepare for your deposition

24 today?

Sharita Spears  30(b)(6)
December 10, 2024

1      A.    I didn't.  I talked to my attorney on

2   Friday.

3      Q.    Which attorney was that?

4      A.    Mr. Blanchfield.

5      Q.    How long did you speak with

6   Mr. Blanchfield?

7      A.    About 15 or 20 minutes.

8      Q.    Did you review any documents to prepare

9   for today's deposition?

10     A.    No.

11     Q.    Have you been provided a copy of the

12  complaint in this litigation?

13     A.    Yes.

14     Q.    Counsel provided you a copy of the

15  complaint; is that right?

16     A.    I don't know if I got a copy of the

17  complaint, but I got what I was supposed to be

18  deposed on.

19     Q.    Did you review that complaint before

20  today's deposition?

21     A.    No.

22     MR. BLANCHFIELD:  Object to form.

23  BY MS. PURTILL:

24     Q.    What is your understanding of what this

Sharita Spears  30(b)(6)
December 10, 2024

 1  litigation is about?

 2      A.     The ADA.

 3      Q.     Do you have any additional understanding

 4  about the substance of this litigation other than

 5  the ADA?

 6      A.     No.

 7      Q.     Do you, personally, know the plaintiff,

 8  Joshua Folks?

 9      A.     No.

10      Q.     Does the department have a policy

11  requiring compliance with the ADA?

12      A.     Yes.

13      Q.     Does that policy require?

14      A.     What does the policy require?

15      Q.     Yes.

16      A.     That we provide persons with

17  disabilities, that we have knowledge of, with equal

18  access to programs, services and activities.

19      Q.     How long has the department had that

20  policy?

21      A.     I'm not sure how long they had it prior

22  to me coming in, but when I got the position in

23  2020, the policy was already in effect.

24      Q.     Has the policy changed since you joined

Sharita Spears 30(b)(6)
December 10, 2024

1    in 2020?

2        A.    No.

3        Q.    What's the purpose of that policy?

4        A.    To provide direction on how to assist the

5    person with a request for accommodation, to provide

6    them with equal access based upon their disability.

7        Q.    Who, if anyone, is responsible for

8    enforcing that policy?

9        A.    The policy is for all employees.  So the

10   ADA facility coordinator is the main person that

11   would be responsible for enforcement of it.

12       Q.    Is there one ADA facility coordinator

13   within the department?

14       A.    No.  There are multiple.

15       Q.    Is there one ADA facility coordinator per

16   prison facility?

17       A.    Some facilities have more than one.

18       Q.    Do you know how many LSP has?

19       A.    LSP has three.

20       Q.    Do you know who those people are?

21       A.    Yes.

22       Q.    Who are they?

23       A.    Ashley Oliveaux.  Jennifer -- I think her

24   name is Signal (phonetic).  And the last person, I

Sharita Spears  30(b)(6)
December 10, 2024

1   can't recall his name right now.

2       Q.    Were all three of those persons ADA

3   facility coordinators in 2021?

4       A.    No.

5       Q.    Were any of them ADA facility

6   coordinators in 2021?

7       A.    Yes.  Ashley Oliveaux.

8       Q.    Does the policy provide for any

9   consequences in case of failure to comply with that

10  policy?

11      A.    Not to my knowledge.

12      Q.    Does the department have a policy setting

13  forth a procedure to identify inmates with

14  disabilities?

15      A.    So yes.  In the policy, they outline who

16  a qualified person would be under the Americans with

17  Disabilities Act.

18      Q.    Aside from defining who is a person with

19  a disability, is there any policy that specifies

20  what procedure people at the department should

21  follow in order to identify which inmates, if any,

22  meet those criteria?

23      A.    Not that I know of.

24      Q.    As a matter of practice, how does the

Sharita Spears  30(b)(6)
December 10, 2024

1  department identify inmates that have disabilities?

2      A.    So I'm not understanding your question

3  because multiple persons can have disabilities.

4          Are we referring to if they are a

5  qualified person under the Americans with

6  Disabilities Act?

7      Q.    I'm talking about under the policy that

8  the department has, this policy that touches on the

9  ADA.  Under this policy there is a definition of

10  persons with disabilities; is that right?

11      A.    Yes.

12      Q.    So as a matter of practice, how does the

13  department identify inmates that meet that

14  definition within the policy?

15      A.    So from an ADA standpoint, they are

16  identified based off of a need that would either be

17  identified by the requester themselves, which could

18  possibly be the inmate, or if medical or someone

19  else deems that the inmate has a disability and they

20  need some type of assistance, then they are

21  evaluated after their point to see if they are

22  qualified under the Americans with Disabilities Act.

23      Q.    When you say they are evaluated, what do

24  you mean by "evaluated"?  What does that evaluation

Sharita Spears  30(b)(6)
December 10, 2024

1  look like?

2      A.    They are sent to the appropriate

3  healthcare provider to make a determination on if

4  accommodations are needed to assist them in being

5  able to participate in any of the programs that we

6  offer, services or any other activities.

7      Q.    In every case where an inmate requests an

8  accommodation, are they sent to a healthcare

9  provider for that assessment?

10      A.    In every case, no, because it's not

11  necessary for every case.

12      Q.    When is it not necessary?

13      A.    It's contingent upon the type of

14  accommodation that the inmate is requesting.

15      Q.    Are there accommodations that don't

16  require the identification of an inmate's disability

17  under the department policy?

18      A.    Can you rephrase your question?

19      Q.    Sure.  I guess I'm trying to understand,

20  you had said that when an inmate requests an

21  accommodation, that they are sent to the appropriate

22  healthcare provider to make a determination on if

23  the accommodations are needed.

24          My question is whether every single time

Sharita Spears  30(b)(6)
December 10, 2024

1   an inmate requests an accommodation, whether they

2   are sent to a healthcare provider for that

3   determination to happen, and I believe you said no;

4   is that correct?

5         A.    That is correct.

6         Q.    When would an inmate not need to be sent

7   to a healthcare provider to make that determination?

8         A.    If their disability is apparent.

9         Q.    What do you mean by "apparent"?

10        A.    Is it visible to the naked eye.  I can

11  see that you are in a wheelchair and you need

12  another wheelchair.

13        Q.    Are there mental health disabilities that

14  can be apparent?

15        A.    No, not all the time.  A person may

16  display a characteristic, but that doesn't

17  necessarily mean that they have a disability.

18        Q.    So I understand your testimony to be that

19  the mental health disabilities aren't always

20  apparent.  Are they sometimes apparent?

21        A.    I'm not a mental health professional so I

22  wouldn't want to speak to if a mental health

23  disability is apparent or not.

24        Q.    For purposes of enforcing this policy,

Sharita Spears  30(b)(6)
December 10, 2024

1  though, this policy defines disability and it's my

2  understanding that certain folks have disabilities

3  that are apparent and not requiring a determination

4  by a healthcare provider.

5          Are there ever cases where individuals

6  with mental health disabilities have a disability

7  that is apparent such that they are not sent to a

8  healthcare provider to determine whether their

9  request for accommodation is appropriate?

10     A.    Not to my knowledge.

11     Q.    What are the ways in which an inmate can

12 make a request for an accommodation under the ADA,

13 within the department's custody?

14     A.    They can make an accommodation verbally.

15 They can make an accommodation request in writing.

16 They can make a request for an accommodation --

17 I guess those are the two ways, verbally or in

18 writing.

19     Q.    How can an inmate make a request for

20 accommodation verbally?  I'm sort of asking, how

21 does that process work?

22     A.    He would let a supervisor know that he

23 needs some type of request for accommodation.  They

24 will, in turn, notify the ADA coordinators so they

Sharita Spears  30(b)(6)
December 10, 2024

1   can coordinate with the inmate to reduce it to

2   writing.

3       Q.    Is that procedure you just described

4   where supervisors are made aware of a request for

5   accommodation and then communicate that to the ADA

6   coordinator, is there a policy, a department policy

7   that specifies that that should happen?

8       A.    Not to my knowledge.

9       Q.    When you say "supervisor," what do you

10  mean supervisor?

11      A.    Someone who is classified as a supervisor

12  under their job description.

13      Q.    Can an inmate verbally request an ADA

14  accommodation from a nonsupervising employee of the

15  department?

16      A.    They have done so before.

17      Q.    In cases where they've done so, were

18  those requests shared with the ADA coordinator?

19      A.    If they couldn't be handled on the unit,

20  yes.

21      Q.    What if they can't be handled on the

22  unit?

23      A.    Then they are referred to the ADA

24  coordinator.

Sharita Spears  30(b)(6)
December 10, 2024

1        Q.     In cases where a request, you said, can

2   be handled on the unit, do those requests go to the

3   ADA coordinator?

4        A.     I'm not sure.

5        Q.     Is there a policy requiring that they go

6   to the ADA coordinator?

7        A.     No.

8        Q.     Is there a policy requiring

9   nonsupervisory officers to do anything, in

10  particular, with a request for accommodation that's

11  communicated verbally to them?

12       A.     No.

13       Q.     When an inmate requests an ADA

14  accommodation in writing, is there a policy

15  governing the procedure to make that request?

16       A.     Yes.

17       Q.     What is that procedure?

18       A.     They file -- they do a request for

19  accommodation through the administrative remedy

20  procedure.

21       Q.     Is the administrative remedy procedure

22  used for purposes other than requests for ADA

23  accommodation?

24       A.     Yes.

1       Q.      Who reviews written ADA requests?

2       A.      The facility ADA coordinator.

3       Q.      Does anyone review ADA requests for

4  accommodation communicated in writing prior to the

5  ADA coordinator?

6       A.      The legal programs department or whoever

7  handles the initial intake of the ARPs.

8       Q.      At LSP who handles the intake of ARPs?

9       A.      I'm not sure.

10       Q.      How do inmates receive an ARP on which

11  they can write their request for accommodation?

12       A.      How do they receive it?

13       Q.      Yes.  Where can an inmate get a copy of

14  an ARP form to file an ADA request?

15       A.      That don't have to be on a particular

16  form.  They can write it on a piece of paper and

17  just send it.

18       Q.      After writing a request on a piece of

19  paper or an ARP form, where can inmates then send

20  that paper in order for it to be reviewed by the

21  department?

22       A.      It goes through the form mail.  So they

23  put it in the designated area.

24       Q.      Is there a designated area in LSP?

Sharita Spears  30(b)(6)
December 10, 2024

```
1        A.      Yes.

2        Q.      Where is that area in LSP?

3        A.      I don't know, exactly, where the area is.

4        Q.      Is there a designated area in each

5   building of LSP?

6        A.      I'm not sure.

7        Q.      Are you familiar with the term

8   "restricted segregation" as it's used in the housing

9   context at the department?

10       A.      Not really.

11       Q.      Are you familiar with the term "solitary

12   confinement"?

13       A.      I've heard the terms.

14       Q.      How would an inmate in solitary

15   confinement submit an ADA request?

16       A.      He can do it verbally or in writing.

17       Q.      What about an inmate who is in treatment

18   segregation that prevents them being allowed paper

19   and writing utensils.  How could they request an ADA

20   accommodation?

21       A.      Verbally.

22       Q.      To whom could they make this request?

23       A.      To a supervisor when they make rounds.

24       Q.      How often do supervisors make rounds?
```

Sharita Spears  30(b)(6)
December 10, 2024

1        A.    I'm not sure.

2        Q.    Does the department have a policy that

3   sets forth procedures to affirmatively identify

4   inmates requiring ADA accommodations whether or not

5   those inmates actually request one themselves?

6        A.    Can you ask your question again.

7        Q.    Sure.  So outside of the situations where

8   an inmate is the one who is requesting an ADA

9   accommodation, does the department have a policy

10  that sets forth how it can affirmatively identify

11  inmates who might need an accommodation?

12       A.    Not to my knowledge.  Before I say "not

13  to my knowledge," you're saying, does the department

14  have a way -- so a particular inmate or a group of

15  inmates?

16       Q.    A particular inmate, let's start there.

17       A.    Okay.  Not to my knowledge.

18       Q.    How about a group of inmates?

19       A.    We do have policies that identify if a

20  person is deaf, what type of accommodation they

21  could potentially need.

22       Q.    How does the prison identify inmates that

23  are deaf?

24       A.    After an assessment by a qualified

Sharita Spears 30(b)(6)
December 10, 2024

1  healthcare provider.

2        Q.    Is a similar assessment done to assess an

3  inmate's mental health?

4        A.    I'm not sure.

5        Q.    Does the department have a policy that

6  provides for how requests for accommodation are to

7  be resolved?  And by "resolved," I mean decide

8  whether to grant or deny a request.

9        A.    No.

10       Q.    In practice, how are requests for

11  accommodation under the ADA decided?

12       A.    They are an individualized assessment of

13  the individual that is requesting and/or that is --

14  has been referred as to needing an accommodation.

15            So it's not a one thing or all.  We

16  assess each individualized inmate to determine what

17  their needs are.

18       Q.    Who is the person doing this

19  individualized assessment?

20       A.    It starts with the ADA coordinator and

21  then the ADA coordinator contacts the qualified

22  healthcare provider and/or mental health provider to

23  get an additional assessment to add documentation

24  prior to a determination being rendered.

Sharita Spears  30(b)(6)
December 10, 2024

1    Q.    Is anyone other than an ADA coordinator

2  authorized to grant a request for accommodations?

3    A.    I'm not sure.  I only work with the ADA

4  coordinators.

5    Q.    Is anyone other than an ADA coordinator

6  authorized to deny a request for accommodations?

7    A.    I'm not sure.

8    Q.    If an ADA coordinator determines that

9  accommodations are appropriate, can the prison

10  warden veto that decision?

11    A.    I guess they could.  I'm not saying that

12  they do or they don't.  I'm not sure.

13    Q.    Does the department have a policy

14  requiring a cost assessment in connection with a

15  request for accommodation?

16    A.    No.

17    Q.    Does the department have a practice of

18  trying to determine how much a requested

19  accommodation would cost prior to deciding that

20  request?

21    A.    Not to my knowledge.

22    Q.    Does the department have a policy that

23  sets forth a procedure to appeal the denial of an

24  ADA request?

Sharita Spears  30(b)(6)
December 10, 2024

1        A.     Yes.

2        Q.     Who decides that appeal?

3        A.     It comes to the headquarter's ADA office.

4        Q.     Does the headquarter's ADA office

5    directly supervise ADA coordinators?

6        A.     No.

7        Q.     Are the individuals in the headquarter's

8    ADA office department employees?

9        A.     Yes.

10       Q.     In deciding an appeal, what sort of

11   information does the headquarter's ADA office take

12   into consideration?

13       A.     The headquarter's ADA office initiates

14   the interactive interview with the inmate.  So they

15   take into consideration the need of the inmate.  We

16   take into consideration the medical history of the

17   inmate to determine if he's a qualified individual

18   under the Americans with Disabilities Act.

19              Based on the inmate's statement, based on

20   what program services and/or activities he's unable

21   to participate in due to his disability, and then

22   any other pertinent information that may be

23   applicable to that particular individual's case

24   prior to making a determination as to if an

1  accommodation is needed and/or if a modification to

2  the requested accommodation is needed.

3      Q.    Has the department ever received a

4  request for accommodation that, specifically, was

5  requesting that the inmate be released from

6  segregation or solitary confinement?

7      A.    I don't recall a particular case where

8  that happened, but I'm not sure.

9      Q.    Has the department ever denied a request

10  for accommodation where the requester was,

11  specifically, asking that they be released from

12  solitary confinement?

13      A.    Again, I'm not sure if a request of that

14  nature has been made.

15      Q.    Has the department ever received a

16  request for accommodation that, specifically, asked

17  that the conditions of solitary confinement be

18  modified in some way?

19      A.    I'm not privy to any request concerning

20  solitary confinement.

21      Q.    Has the department reviewed its policy?

22  We talked about the department's policy earlier,

23  which touched on the ADA.  Has the department

24  reviewed that policy since you have been in your

Sharita Spears  30(b)(6)
December 10, 2024

1  role?

2      A.    Yes.

3      Q.    When?

4      A.    It is currently under review.

5      Q.    Has it been reviewed any other time since

6  you've been in that role?

7      A.    Yes.

8      Q.    When?

9      A.    Last year.

10      Q.    What prompted the current review of the

11  policy?

12      A.    The review has been ongoing, so it wasn't

13  anything that prompted the current one.  It's been

14  an ongoing review that's been going through

15  different stages of our process.

16      Q.    What about the review last year, what

17  prompted that review?

18      A.    It's been the same review.

19      Q.    So the review of the policy that began

20  last year is still under review currently; is that

21  right?

22      A.    Yes.

23      Q.    When did this review that is occurring

24  currently and continued at least until last year,

Sharita Spears  30(b)(6)
December 10, 2024

1  when did that review begin?

2      A.    I'm not sure of the exact date.

3      Q.    Had it already begun when you joined your

4  current office?

5      A.    No.

6      Q.    It began sometime after 2020?

7      A.    Yeah, it began after I joined the office.

8      Q.    You joined the office in December 2020?

9      A.    Yes.

10      Q.    As part of that review, has the

11  department collected any data on requests for

12  accommodation under the ADA?

13      A.    Yes.  We have a database.

14      Q.    What kind of data is collected in that

15  database?

16      A.    Inmates' names, DOC numbers,

17  accommodation requests, the different types of

18  accommodations they are requesting, and the

19  disposition of the request.

20      Q.    How was the type of accommodation logged

21  in the database?

22      A.    What do you mean?

23      Q.    Are there a discrete number of types of

24  requests that you're selecting one of the few types,

Sharita Spears  30(b)(6)
December 10, 2024

1  or is it sort of an open-ended description of what

2  the requester is asking for?

3       A.    They have a different type that is based

4  on accessibility need, if it's based on personal

5  individualized need, and then they have an

6  open-ended field where you can type in the type of

7  accommodation requested.

8       Q.    Who is selecting those fields?

9       A.    The facility ADA coordinator when they

10  input the information.

11      Q.    How often do the facility ADA

12  coordinators input that information?

13      A.    The information is put in monthly.

14      Q.    As part of the department's review of

15  this policy, has it looked at the rates of denials

16  of requests for accommodation?

17      A.    That is one of the factors that is

18  monitored in the database.

19      Q.    As part of the review has the department

20  considered the number of requests related to

21  requests for modification of conditions of solitary

22  confinement?

23      A.    Again, I am not -- I don't have any

24  knowledge about any conditions concerning solitary

Sharita Spears  30(b)(6)
December 10, 2024

```
1   confinement.
2        Q.    Other than the data in the database, is
3   there any other kind of data that the department has
4   collected as part of its review of this policy?
5        A.    No.
6        Q.    Ms. Spears, I am going to try and show
7   you an exhibit.  I'm going to drop it in the Zoom
8   Chat and please let me know if you receive it or
9   have any difficulties opening it.
10              I'd like to mark this as Exhibit 1.
11                   (WHEREUPON, a certain document was
12                   marked Exhibit No. 1, for
13                   identification, as of 12/10/2024.)
14   BY MS. PURTILL:
15        Q.    Do you recognize this document?
16        A.    Yes.
17        Q.    What is this document?
18        A.    The HCP37 department regulation
19   concerning the Americans with Disabilities Act and
20   how to make a request for accommodation.
21        Q.    This is the policy we've been discussing
22   that provides for how requests for accommodation --
23   that provides for processes to handle requests for
24   accommodation; is that right?
```

Sharita Spears 30(b)(6)
December 10, 2024

1    A.    Yes.

2    Q.    Can you see that this document is

3  redlined.   There are portions of text that are

4  crossed out and added in purple?

5    A.    Yes.

6    Q.    I'm going to refer to those changes as

7  redline.   Do you know who drafted that redline?

8    A.    According to one of the initials on it, I

9  was a part of the draft, the drafting team.

10    Q.    What are your initials?

11    A.    SS.

12    Q.    Was this redline conducted as part of the

13  review you're speaking about that is still ongoing

14  currently?

15    A.    Yes.

16    Q.    Has any version of this policy been

17  enacted since March 23rd, 2018, the date on the top

18  of this policy?

19    A.    From the updates that we have, the

20  suggested updates?

21    Q.    Yeah.   If you look at the first page of

22  this document where it says, March 23rd, 2018, do

23  you understand that to be the date that the policy

24  was initially enacted?

Sharita Spears  30(b)(6)
December 10, 2024

1      A.    I don't know if it was the date that the

2   policy was initially enacted, but that's the date

3   that this policy, minus the redlines was enacted,

4   yes.

5      Q.    Do you understand that any other version

6   of this policy was put into place after March 23rd,

7   2018?

8      A.    Not to my knowledge.

9      Q.    So this is still a working draft; is that

10  right?

11     A.    Yes.

12     MS. PURTILL:  Why don't we take just a

13  five-minute break and come back at -- it's currently

14  4:49 here.  What if we come back at like 4:55.  It

15  will be 3:55 Central.

16     MR. BLANCHFIELD:  Okay.

17     THE VIDEOGRAPHER:  Going off the record.  21:50

18  UTC.

19                 (WHEREUPON, a recess was had.)

20     THE VIDEOGRAPHER:  We're back on the record.

21  21:57.

22  BY MS. PURTILL:

23     Q.    Does the department keep a ready list of

24  accommodations appropriate for inmates who are deaf?

Sharita Spears 30(b)(6)
December 10, 2024

1       A.      I'm sorry?

2       Q.      Does the department have sort of a ready

3  list of potential accommodations for inmates who are

4  deaf?

5       A.      We don't have a list of accommodations

6  for inmates that are deaf outside of hearing aids or

7  ASL interpreters.

8       Q.      Are those accommodations that are sort of

9  understood to be standard within the department?

10      A.      Yes, but they are also in the policy.

11      Q.      Is there anything in the policy that

12 lists similar accommodations for inmates with mental

13 health disabilities?

14      A.      No.

15      Q.      Are you aware of any standard set of

16 accommodations within the department for inmates

17 with mental health disabilities?

18      A.      No.

19      MS. PURTILL:  We have no further questions.  We

20 are done for the day.  Thank you.

21      THE VIDEOGRAPHER:  That concludes the

22 deposition.  Off the record at 21:59.

23      THE REPORTER:  Signature?

24      MR. BLANCHFIELD:  We're going to waive on this

Sharita Spears  30(b)(6)
December 10, 2024

1   one.

2        THE REPORTER:  The same order of the

3   transcript, Sarah, rough and then the original?

4        MS. PURTILL:  Yes, please.  Thank you.

5        THE REPORTER:  Drew, a copy?

6        MR. BLANCHFIELD:  Yes, a copy for me,

7   electronic.  No video.

8                    (WHEREUPON, at 3:59 PM,

9                    the deposition of SHARITA SPEARS

10                   was concluded.)

11                   *  *  *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

Sharita Spears  30(b)(6)
December 10, 2024

```
 1  STATE OF ILLINOIS  )

 2                     )  SS:

 3  COUNTY OF DUPAGE   )

 4                 I, KAREN PILEGGI, a Notary Public

 5  within and for the County of DuPage, State of

 6  Illinois, and a Certified Shorthand Reporter of said

 7  state, do hereby certify:

 8                 That previous to the commencement of

 9  the examination of the witness, the witness was duly

10  sworn to testify the whole truth concerning the

11  matters herein;

12                 That the foregoing deposition

13  transcript was reported stenographically by me, was

14  thereafter reduced to typewriting under my personal

15  direction, and constitutes a true record of the

16  testimony given and the proceedings had;

17                 That the said deposition was taken

18  before me at the time and place specified;

19                 That I am not a relative or employee

20  or attorney or counsel, nor a relative or employee

21  of such attorney or counsel for any of the parties

22  hereto, nor interested directly or indirectly in the

23  outcome of this action.

24                 IN WITNESS WHEREOF, I do hereunto
```

Sharita Spears   30(b)(6)
December 10, 2024

1  set my hand and affix my seal of office at Chicago,

2  Illinois this 27th day of December, 2024.

3

4

5                    Notary Public, DuPage

6                    County, Illinois.

7                    My commission expires 5/2/28.

8

9  CSR Certificate No. 84-3404

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### Exhibits

**EX 0001 Sharit**
**a Spears 12102**
**4**
  3:9  31:10,12

---

**1**

**1**
  3:9  6:10
  31:10,12
**1/2**
  6:6
**1099**
  2:3
**10th**
  4:2
**12**
  3:9
**12/10/2024**
  31:13
**12101**
  9:4
**15**
  11:7
**17**
  6:6

---

**2**

**2**
  6:10
**20**
  11:7
**20001**
  2:4
**2018**
  32:17,22

**33:7**
**2020**
  6:3  12:23
  13:1  29:6,8
**2021**
  14:3,6
**2024**
  4:2
**21:03**
  4:2
**21:50**
  33:17
**21:57**
  33:21
**21:59**
  34:22
**23-CV-01289**
  4:11
**23rd**
  32:17,22
  33:6

---

**3**

**3**
  6:10
**30(b)(6)**
  4:6  6:20
**31**
  3:9
**3:55**
  33:15

---

**4**

**42**
  9:3
**4:49**
  33:14

**4:55**
  33:14

---

**5**

**5**
  3:4

---

**6**

**6**
  3:4

---

**7**

**701**
  2:12
**70802**
  2:13

---

**8**

**84-3404**
  2:24

---

**9**

**900**
  2:3

---

**A**

**abbreviation**
  6:12  8:23
**ablanchfield@**
**keoghcox.com**
  2:15
**access**
  10:12  12:18
  13:6
**accessibility**
  30:4

**accommodation**
  13:5  16:8,
  14,21  17:1
  18:9,12,14,
  15,16,20,23
  19:5,14
  20:10,14,19,
  23  21:4,11
  22:20  23:9,
  11,20  24:6,
  11,14  25:15,
  19  27:1,2,4,
  10,16  29:12,
  17,20  30:7,
  16  31:20,22,
  24
**accommodations**
  10:2  16:4,
  15,23  23:4
  25:2,6,9
  29:18  33:24
  34:3,5,8,12,
  16
**accurate**
  7:19
**Act**
  9:3  10:10
  14:17  15:6,
  22  26:18
  31:19
**activities**
  10:12  12:18
  16:6  26:20
**ADA**
  9:4  10:3,5,
  8,9,14,16,21
  12:2,5,11
  13:10,12,15
  14:2,5  15:9,
  15  18:12,24
  19:5,13,18,
  23  20:3,6,
  13,22  21:1,

2,3,5,14
22:15,19
23:4,8
24:11,20,21
25:1,3,5,8,
24 26:3,4,5,
8,11,13
27:23 29:12
30:9,11

**add**
24:23

**added**
32:4

**additional**
12:3 24:23

**administrative**
6:9 20:19,21

**Adult**
6:14

**affirmatively**
23:3,10

**ahead**
8:16 9:7,16

**aids**
34:6

**allowed**
22:18

**Americans**
9:2 10:9
14:16 15:5,
22 26:18
31:19

**and/or**
24:13,22
26:20 27:1

**Andrew**
2:14 4:24

**Angola**
8:20

**answering**
9:18

**apparent**
17:8,9,14,
20,23 18:3,7

**appeal**
25:23 26:2,
10

**appearances**
4:16

**appeared**
2:9,18

**applicable**
26:23

**approximately**
6:6 7:4

**ARDC**
6:10,11,12

**area**
21:23,24
22:2,3,4

**ARP**
21:10,14,19

**ARPS**
21:7,8

**Ashley**
13:23 14:7

**ASL**
34:7

**assess**
24:2,16

**assessment**
16:9 23:24
24:2,12,19,
23 25:14

**assist**
13:4 16:4

**assistance**
15:20

**assistant**
6:1

**assume**
8:17

**attorney**
4:9 5:9
11:1,3

**audible**
7:23

**authorized**
25:2,6

**Avenue**
2:3

**aware**
10:13 19:4
34:15

---

**B**

**back**
33:13,14,20

**based**
13:6 15:16
26:19 30:3,4

**Baton**
2:13

**began**
28:19 29:6,7

**begin**
8:7 29:1

**beginning**
9:3

**begun**
29:3

**behalf**
2:9,18 4:13,
14,24 6:21
7:8 10:1

**bit**

8:10

**Blanchfield**
2:14 4:24
11:4,6,22
33:16 34:24

**Block**
2:2 4:21 5:9

**break**
9:12,14,15,
16,19 33:13

**building**
22:5

---

**C**

**called**
5:4

**capacity**
7:4

**case**
4:11 14:9
16:7,10,11
26:23 27:7

**cases**
18:5 19:17
20:1

**center**
6:14

**Central**
33:15

**changed**
12:24

**characteristic**
17:16

**Chat**
31:8

**CHELSEA**
2:16

**clarify**

8:14 9:1

**classified**
19:11

**clear**
8:5

**Code**
4:3

**codified**
9:3

**colleagues**
4:22

**collected**
29:11,14
31:4

**communicate**
19:5

**communicated**
20:11 21:4

**complaint**
11:12,15,17,
19

**compliance**
10:21 12:11

**comply**
14:9

**concludes**
34:21

**conditions**
27:17 30:21,
24

**conducted**
32:12

**confinement**
22:12,15
27:6,12,17,
20 30:22
31:1

**confusion**
5:21

**connection**
6:24 10:16
25:14

**consequences**
14:9

**consideration**
26:12,15,16

**considered**
30:20

**contacts**
24:21

**context**
22:9

**contingent**
16:13

**continued**
28:24

**convenience**
5:17 8:19

**coordinate**
19:1

**coordinator**
6:9 13:10,
12,15 19:6,
18,24 20:3,6
21:2,5
24:20,21
25:1,5,8
30:9

**coordinators**
14:3,6 18:24
25:4 26:5
30:12

**copy**
11:11,14,16
21:13

**corporate**
4:7 6:21

**correct**
17:4,5

**Corrections**
5:15,19

**cost**
25:14,19

**counsel**
4:16 9:6
11:14

**court**
4:10,14,17
7:21

**COX**
2:11

**cpayne@
keoghcox.com**
2:17

**created**
10:10

**creating**
4:3

**criteria**
14:22

**crossed**
32:4

**CRR**
2:23

**CSR**
2:23,24

**current**
5:23 28:10,
13 29:4

**custody**
18:13

---

D

---

**data**
29:11,14
31:2,3

**database**

29:13,15,21
30:18 31:2

**date**
29:2 32:17,
23 33:1,2

**day**
34:20

**DC**
2:4

**deaf**
23:20,23
33:24 34:4,6

**December**
4:2 6:3 29:8

**decide**
24:7

**decided**
24:11

**decides**
26:2

**deciding**
25:19 26:10

**decision**
25:10

**deems**
15:19

**Defendant**
2:18

**defendants**
5:1

**defines**
18:1

**defining**
14:18

**definition**
15:9,14

**denial**
25:23

denials
30:15

denied
27:9

deny
24:8 25:6

department
5:14,19,20,
24 6:5,8,22
7:1,5,8 10:2
12:10,19
13:13 14:12,
20 15:1,8,13
16:17 19:6,
15 21:6,21
22:9 23:2,9,
13 24:5
25:13,17,22
26:8 27:3,9,
15,21,23
29:11 30:19
31:3,18
33:23 34:2,
9,16

department's
10:21 18:13
27:22 30:14

deposed
6:15,17 7:3,
10 11:18

deposition
3:8 4:6 5:18
7:14 10:23
11:9,20
34:22

Deputy
6:1

description
19:12 30:1

designated
10:1 21:23,
24 22:4

determination
16:3,22
17:3,7 18:3
24:24 26:24

determine
18:8 24:16
25:18 26:17

determines
25:8

diagnostic
6:14

difficulties
31:9

direction
13:4

directly
26:5

disabilities
9:3 10:10,11
12:17 14:14,
17 15:1,3,6,
10,22 17:13,
19 18:2,6
26:18 31:19
34:13,17

disability
13:6 14:19
15:19 16:16
17:8,17,23
18:1,6 26:21

discrete
29:23

discuss
7:22

discussing
31:21

display
17:16

disposition
29:19

District
4:10

DOC
29:16

document
31:11,15,17
32:2,22

documentation
24:23

documents
11:8

draft
32:9 33:9

drafted
32:7

drafting
32:9

drop
31:7

due
26:21

duly
5:2,4

---
**E**
---

earlier
27:22

effect
12:23

employed
5:13 6:4

employee
19:14

employees
13:9 26:8

enacted
32:17,24
33:2,3

encounter
10:16

enforcement
13:11

enforcing
13:8 17:24

ensure
10:11

entity
5:21 8:24

equal
10:11 12:17
13:6

et al
4:9

evaluated
15:21,23,24

evaluation
15:24

exact
29:2

Examination
3:1,4 5:6

examined
5:5

exhibit
3:8,9 31:7,
10,12

eye
17:10

---
**F**
---

facilities
13:17

facility
13:10,12,15,
16 14:3,5
21:2 30:9,11

Sharita Spears 30(b)(6)
December 10, 2024

factors
   30:17

failure
   14:9

familiar
   7:12 10:5
   22:7,11

feel
   9:15

field
   30:6

fields
   30:8

file
   20:18 21:14

Finally
   9:10

finish
   8:6,8 9:17

firm
   4:21

five-minute
   33:13

folks
   4:8,20 5:10
   12:8 18:2

follow
   14:21

form
   11:22 21:14,
   16,19,22

free
   9:15

Friday
   11:2

full
   5:11

G

General
   4:9

gestures
   8:3

give
   7:18

governing
   20:15

grant
   24:8 25:2

ground
   7:11,14

group
   23:14,18

guess
   16:19 18:17
   25:11

H

handle
   31:23

handled
   19:19,21
   20:2

handles
   21:7,8

happen
   17:3 19:7

happened
   27:8

happy
   8:13,14 9:1

HCP37
   31:18

head

8:2

headquarter's
   26:3,4,7,11,
   13

health
   17:13,19,21,
   22 18:6
   24:3,22
   34:13,17

healthcare
   16:3,8,22
   17:2,7 18:4,
   8 24:1,22

heard
   22:13

hearing
   34:6

history
   26:16

honest
   7:18

hope
   9:10

hour
   9:12

housing
   22:8

I

identification
   16:16 31:13

identified
   15:16,17

identify
   14:13,21
   15:1,13
   23:3,10,19,
   22

important
   8:5

individual
   24:13 26:17

individual's
   26:23

individualized
   24:12,16,19
   30:5

individuals
   18:5 26:7

information
   26:11,22
   30:10,12,13

initial
   21:7

initially
   32:24 33:2

initials
   32:8,10

initiates
   26:13

inmate
   15:18,19
   16:7,14,20
   17:1,6
   18:11,19
   19:1,13
   20:13 21:13
   22:14,17
   23:8,14,16
   24:16 26:14,
   15,17 27:5

inmate's
   16:16 24:3
   26:19

inmates
   14:13,21
   15:1,13
   21:10,19

23:4,5,11,
15,18,22
33:24 34:3,
6,12,16

**Inmates'**
29:16

**input**
30:10,12

**instructs**
9:8

**intake**
21:7,8

**interactive**
26:14

**interpreters**
34:7

**interview**
26:14

**involve**
10:20

---

### J

**Jeff**
4:9

**Jenner**
2:2 4:21 5:9

**Jennifer**
13:23

**job**
5:23 7:1
10:17 19:12

**joined**
4:21 12:24
29:3,7,8

**Joshua**
4:8,20 5:10
12:8

**Julius**

2:7 4:23

**julius.
mitchell@
jenner.com**
2:8

---

### K

**Karen**
2:23 4:14

**KEOGH**
2:11

**kind**
29:14 31:3

**knowledge**
12:17 14:11
18:10 19:8
23:12,13,17
25:21 30:24
33:8

---

### L

**Landry**
4:9

**Lauren**
2:22 4:12

**law**
4:21 10:10

**legal**
4:13,15 21:6

**License**
2:24

**likewise**
8:8

**list**
33:23 34:3,5

**lists**
34:12

**litigation**
10:13,18
11:12 12:1,4

**LLP**
2:2

**locked**
4:5

**logged**
29:20

**long**
6:2,4 9:13
11:5 12:19,
21

**looked**
30:15

**Louisiana**
2:13 4:8,11
5:14,18 8:20

**LSP**
8:20 13:18,
19 21:8,24
22:2,5

**Luke**
2:21 4:22

**Luzod**
2:22 4:12

---

### M

**made**
19:4 27:14

**mail**
21:22

**main**
2:12 13:10

**make**
16:3,22 17:7
18:12,14,15,
16,19 20:15
22:22,23,24

**31:20**

**making**
26:24

**manager**
6:11

**March**
32:17,22
33:6

**mark**
31:10

**marked**
31:12

**matter**
4:8,20 5:10
14:24 15:12

**medical**
15:18 26:16

**meet**
14:22 15:13

**mental**
17:13,19,21,
22 18:6
24:3,22
34:12,17

**Middle**
4:10

**minus**
33:3

**minutes**
11:7

**Mitchell**
2:7 4:23

**modification**
27:1 30:21

**modified**
27:18

**Molly**
2:20

monitored
  30:18

monthly
  30:13

multiple
  13:14 15:3

---

### N

naked
  17:10

names
  29:16

nature
  27:14

necessarily
  17:17

needed
  16:4,23
  27:1,2

needing
  24:14

nods
  8:2

nonsupervising
  19:14

nonsupervisory
  20:9

nonverbal
  8:2

notify
  18:24

number
  29:23 30:20

numbers
  29:16

NW
  2:3

---

### O

oath
  7:16

Oberstein-
allen
  2:20

object
  9:6 11:22

obligated
  7:16

occurring
  28:23

offer
  16:6

office
  26:3,4,8,11,
  13 29:4,7,8

officers
  20:9

Oliveaux
  13:23 14:7

ongoing
  28:12,14
  32:13

open-ended
  30:1,6

opening
  31:9

order
  7:22 8:4
  14:21 21:20

outline
  14:15

oversight
  10:20

---

### P

paper
  21:16,19,20
  22:18

part
  29:10 30:14,
  19 31:4
  32:9,12

participate
  16:5 26:21

PAYNE
  2:16

pending
  9:18

Penitentiary
  8:20

people
  13:20 14:20

person
  13:5,10,24
  14:16,18
  15:5 17:15
  23:20 24:18

personal
  30:4

personally
  12:7

persons
  10:11 12:16
  14:2 15:3,10

pertinent
  26:22

phonetic
  13:24

piece
  21:16,18

Pileggi
  2:23 4:14

place
  33:6

plaintiff
  2:9 4:20
  5:10 12:7

Platzer
  2:21 4:22

point
  15:21

policies
  23:19

policy
  12:10,13,14,
  20,23,24
  13:3,8,9
  14:8,10,12,
  15,19 15:7,
  8,9,14 16:17
  17:24 18:1
  19:6 20:5,8,
  14 23:2,9
  24:5 25:13,
  22 27:21,22,
  24 28:11,19
  30:15 31:4,
  21 32:16,18,
  23 33:2,3,6
  34:10,11

portions
  32:3

position
  6:9,10 12:22

possibly
  15:18

potential
  34:3

potentially
  23:21

practice
  14:24 15:12
  24:10 25:17

**prepare**
  10:23 11:8

**PRESENT**
  2:1,20

**prevents**
  22:18

**prior**
  10:13,17
  12:21 21:4
  24:24 25:19
  26:24

**prison**
  13:16 23:22
  25:9

**privy**
  27:19

**procedure**
  14:13,20
  19:3 20:15,
  17,20,21
  25:23

**procedures**
  23:3

**process**
  18:21 28:15

**processes**
  31:23

**professional**
  17:21

**program**
  26:20

**programs**
  10:12 12:18
  16:5 21:6

**prompted**
  28:10,13,17

**protect**
  10:11

**provide**

  12:16 13:4,5
  14:8

**provided**
  11:11,14

**provider**
  16:3,9,22
  17:2,7 18:4,
  8 24:1,22

**Public**
  5:14,19

**purple**
  32:4

**purpose**
  4:3 13:3

**purposes**
  17:24 20:22

**Purtill**
  2:5 3:4 4:19
  5:7,8 11:23
  31:14 33:12,
  22 34:19

**put**
  21:23 30:13
  33:6

---

**Q**

**qualified**
  14:16 15:5,
  22 23:24
  24:21 26:17

**question**
  8:7,9,12,16
  9:18 15:2
  16:18,24
  23:6

**questions**
  8:1 9:7,20
  34:19

---

**R**

**rates**
  30:15

**ready**
  33:23 34:2

**reason**
  7:18

**recall**
  14:1 27:7

**recap**
  7:12

**receive**
  21:10,12
  31:8

**received**
  27:3,15

**reception**
  6:14

**recess**
  33:19

**recognize**
  31:15

**record**
  4:1,17 8:5
  33:17,20
  34:22

**recording**
  4:4

**redline**
  32:7,12

**redlined**
  32:3

**redlines**
  33:3

**reduce**
  19:1

**refer**
  5:18 8:19
  9:2 32:6

**referred**
  19:23 24:14

**referring**
  15:4

**regulation**
  31:18

**related**
  30:20

**released**
  27:5,11

**remedy**
  20:19,21

**rendered**
  24:24

**rephrase**
  8:14,15
  16:18

**REPORTED**
  2:23

**reporter**
  4:14,17 7:21
  34:23

**represent**
  5:9

**representative**
  4:7 6:21

**request**
  13:5 18:9,
  12,15,16,19,
  23 19:4,13
  20:1,10,15,
  18 21:11,14,
  18 22:15,19,
  22 23:5 24:8
  25:2,6,15,
  20,24 27:4,
  9,13,16,19

29:19 31:20

**requested**
25:18 27:2
30:7

**requester**
15:17 27:10
30:2

**requesting**
16:14 23:8
24:13 27:5
29:18

**requests**
10:2 16:7,20
17:1 19:18
20:2,13,22
21:1,3 24:6,
10 29:11,17,
24 30:16,20,
21 31:22,23

**require**
12:13,14
16:16

**requiring**
12:11 18:3
20:5,8 23:4
25:14

**resolved**
24:7

**respond**
8:7

**responding**
8:8

**responses**
7:23

**responsibiliti
es**
10:17

**responsible**
13:7,11

**restricted**
22:8

**review**
11:8,19 21:3
28:4,10,12,
14,16,17,18,
19,20,23
29:1,10
30:14,19
31:4 32:13

**reviewed**
21:20 27:21,
24 28:5

**reviews**
21:1

**RMR**
2:23

**role**
6:2 10:20
28:1,6

**roles**
6:7

**Rouge**
2:13

**rounds**
22:23,24

**RPR**
2:23

**rules**
7:11,14

**running**
9:12

---

**S**

---

**Safety**
5:14,19

**Sarah**
2:5 4:19 5:8

**screens**
4:5

**secretary**
6:1

**Section**
9:4

**segregation**
22:8,18 27:6

**selecting**
29:24 30:8

**send**
21:17,19

**services**
10:12 12:18
16:6 26:20

**set**
34:15

**sets**
23:3,10
25:23

**setting**
14:12

**shared**
19:18

**Sharita**
3:3 4:7 5:3,
12

**show**
31:6

**Signal**
13:24

**Signature**
34:23

**similar**
24:2 34:12

**single**
16:24

**situations**

23:7

**solitary**
22:11,14
27:6,12,17,
20 30:21,24

**sooner**
9:14,16

**sort**
18:20 26:10
30:1 34:2,8

**sounds**
7:10

**speak**
8:5 11:5
17:22

**speaking**
5:21 32:13

**Spears**
3:3 4:7 5:3,
8,12 6:15
31:6

**Specialist**
6:10

**specifically**
27:4,11,16

**specifies**
14:19 19:7

**spotlighted**
4:5

**spurtill@
jenner.com**
2:6

**SS**
32:11

**stages**
28:15

**standard**
34:9,15

Sharita Spears 30(b)(6)
December 10, 2024

standpoint
  15:15
start
  23:16
started
  9:22
starts
  24:20
state
  4:16 5:11
  8:20
statement
  26:19
States
  4:10
Street
  2:12
submit
  22:15
substance
  12:4
suggested
  32:20
Suite
  2:3
supervise
  26:5
supervisor
  6:11 18:22
  19:9,10,11
  22:23
supervisors
  19:4 22:24
Support
  4:13,15
supposed
  11:17
swear

  4:17
sworn
  5:2,5

---

**T**

---

taking
  7:21 9:15
talked
  11:1 27:22
talking
  8:24 15:7
team
  32:9
technician
  4:13
term
  22:7,11
terms
  7:13 22:13
testified
  5:5 6:20,24
testify
  10:1
testifying
  7:8
testimony
  7:19 9:11
  17:18
text
  32:3
thing
  24:15
time
  4:3 5:21
  16:24 17:15
  28:5
times
  6:17 7:3

title
  5:23
today
  7:7,19 10:24
today's
  7:14 11:9,20
top
  32:17
total
  6:5
touched
  27:23
touches
  15:8
treatment
  22:17
tricky
  8:10
truth
  7:16
turn
  18:24
type
  15:20 16:13
  18:23 23:20
  29:20 30:3,6
types
  29:17,23,24

---

**U**

---

U.S.
  4:13,15
uh-huh
  8:2
unable
  26:20
unclear
  8:12

understand
  7:7,15 9:8
  16:19 17:18
  32:23 33:5
understanding
  9:24 10:7
  11:24 12:3
  15:2 18:2
understood
  8:17 34:9
unit
  19:19,22
  20:2
United
  4:9
Universal
  4:2
updates
  32:19,20
USC
  9:4
UTC
  33:18
utensils
  22:19

---

**V**

---

verbally
  18:14,17,20
  19:13 20:11
  22:16,21
version
  32:16 33:5
versus
  4:8
veto
  25:10
video
  4:4,5,6,12

Sharita Spears  30(b)(6)
December 10, 2024

**visible**
  17:10

-----------------

W

-----------------

**wait**
  8:8

**waive**
  34:24

**warden**
  25:10

**Washington**
  2:4

**ways**
  18:11,17

**wheelchair**
  17:11,12

**WILSON**
  2:11

**witness-only**
  4:4

**work**
  8:21 18:21
  25:3

**working**
  33:9

**write**
  21:11,16

**writing**
  18:15,18
  19:2 20:14
  21:4,18
  22:16,19

**written**
  21:1

-----------------

Y

-----------------

**year**
  28:9,16,20,

  24

**years**
  6:6

**York**
  2:3

-----------------

Z

-----------------

**zoom**
  2:1 8:10
  9:11 31:7