UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Joshua Folks,

    Plaintiff,

        v.

Louisiana Attorney General Jeff Landry, *et al.*,

    Defendants.

Civ. Case No. 23-cv-01289-SDD-RLB

**DECLARATION OF JOSHUA FOLKS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Joshua Folks, declare the following:

1. I am the plaintiff in this case, *Folks v. Landry et al.*

2. I am 47 years old. I currently live with a family friend in Channelview, Texas.

3. I was incarcerated at the Louisiana State Penitentiary ("LSP") from March 31, 2021, until November 14, 2022.

4. While I was incarcerated, LSP placed me on suicide watch for long stretches of time. I was on suicide watch or treated as a suicide risk for nearly the entire time I was held in LSP custody.

5. LSP sometimes placed me on extreme suicide watches where I was held in an isolated cell, handcuffed, and placed in leg irons for several days and even weeks at a time.

6. During one period in July 2021, LSP staff forced me to stay isolated and in restraints for over thirty days, even while I was recovering from surgeries for severe physical injuries that I had sustained from self-harming.

1

7. Even after I was released from restraints, I could not move without severe pain for weeks while I recovered from my injuries and surgeries. I also experienced nausea, vomiting, and trouble with eating and digestion while I recovered.

8. When LSP staff did not formally place me on extreme suicide watch, they still restricted my access to things because they believed me to be a risk for suicide or self-harm.

9. Because of my mental health symptoms, LSP staff prescribed me, and I took, high doses of Thorazine and other anti-psychotic medications like Artane daily. I started taking around 600 mg of Thorazine per day when I first arrived at LSP. At some point while I was incarcerated, I took up to 800 mg of Thorazine per day.

10. Thorazine and other medications impacted my mobility and my ability to think clearly. On these drugs, I sometimes missed meals and bathroom breaks because I could not move or get up. I was mentally slower and had trouble putting thoughts together.

11. Together, these conditions made it difficult for me to file ARPs.

12. For instance, while I was on extreme suicide watch, I was physically restrained for long periods, and could not write or file ARPs.

13. Even when I was not held in restraints, the prison staff would not give me access to pens, pencils, or paper because I was a known suicide and self-harm risk, and prison staff believed I could use these items to harm myself. Even when I requested these materials, prison staff often refused to give them to me. Without these materials, I was unable to write ARPs, or, indeed, any notes or letters to people outside the prison.

14. And the high doses of Thorazine and other drugs I was given often made it very difficult to write ARPs. First, these drugs made it hard to think clearly, preventing me from writing

2

ARPs in a logical way, or understanding and following the process for filing ARPs. Second, the side effects of these medicines also made the physical act of writing difficult.

15. Prison staff also pressured me not to file or to withdraw ARPs. In my experience at LSP, prison officials frequently pressured inmates not to file or to withdraw ARPs. Sometimes, a trusted official like a chaplain or pastor would influence inmates to drop ARPs in exchange for some privilege or benefit.

16. As an example of this kind of pressure, on April 18, 2022, I filed an ARP addressing unsanitary conditions and flooding in my cell, which I withdrew on May 14, 2022. I did so because I was afraid that if I did not, the shift supervisor who would be held responsible for my cellblock would start withholding the few privileges he had helped me get while I was on continuous isolation and suicide watch. The shift supervisor and I had also developed a good rapport and I did not want my ARP to ruin one of the few relationships I had formed after being isolated for over a year at that point at LSP.

17. I was able to file a few ARPs through the assistance of sympathetic inmates. Occasionally, while I was housed in an isolated cell, another inmate would pass me a pencil and paper that I could use to write ARPs. Sometimes, inmate lawyers helped me prepare ARPs.

18. For example, I filed an ARP on November 9, 2021, requesting copies of my mental health and medical records describing my incidents of self-harm at LSP. In the same ARP, I also requested photographs of the injuries I sustained from these self-harm incidents. I was only able to file this ARP with help from inmate lawyers. Regardless, LSP denied my ARP and appeal.

19. Also on November 9, 2021, I filed an ARP requesting copies of my rap sheet, parole hold, and detainer. Again, I filed this ARP only because I had help from other inmates. This ARP was granted.

20. Finally, I never made any threats to harm others while I was in the defendants' custody.

I declare under the penalty of perjury that the above is true and correct.

Executed on August 15, 2025.

>Respectfully submitted,
>
>*/s/ Joshua Folks*
>Joshua Folks

4