UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSHUA FOLKS

versus

JEFF LANDRY, ET AL.

CIVIL ACTION

23-1289-SDD-RLB

## RULING

Before the Court is a Motion for Summary Judgment[1] filed by defendants the Louisiana Department of Public Safety & Corrections ("DPSC"), Tim Hooper ("Warden Hooper"), Paul Toce ("Director Toce"), Dan Lafleur ("Director Lefleur"), Ashli Oliveaux ("Administrator Oliveaux") and Matthew Gamble ("Dr. Gamble") (collectively, "Defendants"). Plaintiff Joshua Folks ("Plaintiff" or "Folks") opposes the motion,[2] and Defendants have filed a reply.[3] For the following reasons, Defendants' Motion for Summary Judgment[4] is granted.

### I.  BACKGROUND

On March 26, 2021, Folks was arrested in St. Mary's Parish.[5] Within days of being incarcerated in St. Mary's Parish, he self-harmed twice.[6] Folks was charged with self-mutilation by a prisoner.[7] St. Mary's Parish requested that Folks be transferred to Louisiana State Penitentiary ("LSP") due to his self-harm.[8] Folks was incarcerated at LSP from March 31, 2021, to November 14, 2022.[9] He was a pretrial detainee until August 10,

---

[1] Rec. Doc. 55.
[2] Rec. Doc. 70.
[3] Rec. Doc. 75.
[4] Rec. Doc. 55.
[5] Rec. Doc. 55-24, p. 4.
[6] Rec. Doc. 55-10.
[7] Rec. Doc. 70-4, p. 29.
[8] Rec. Doc. 55-10.
[9] Rec. Doc. 55-24, p. 6.

2022. From April 11, 2021, to August 17, 2021, Folks was under various levels of suicide watch due to multiple instances of self-harm.[10]

On September 12, 2023, Folks filed the present lawsuit against Defendants, along with various other "Doe" defendants, alleging violations of state and federal law with respect to his incarceration at LSP.[11] His claims are as follows:

- Count 1: An Americans with Disabilities Act ("ADA") Claim against the DPSC;[12]

- Count 2: A Rehabilitation Act ("RA") Claims against the DPSC;[13]

- Count 3: An Eighth and Fourteenth Amendment Deliberate Indifference Claim under 42 U.S.C. § 1983 against Warden Hooper, Assistant Warden for Health Services Doe, Director Toce, Director Lefleur, Acute Treatment Unit Director Doe, Administrator Oliveaux, Dr. Gamble, Officer Doe, and EMT Doe Damages;[14]

- Count 4: An Eighth and Fourteenth Amendment Conditions of Confinement Claim under 42 U.S.C. § 1983 against Warden Hooper, Assistant Warden for Health Services Doe, Director Toce, Director Lefleur, Acute Treatment Unit Director Doe, Administrator Oliveaux, Dr. Gamble, Officer Doe, and EMT Doe Damages;[15]

- Count 5: A Louisiana Negligence Claim against Warden Hooper, Assistant Warden for Health Services Doe, Director Toce, Director Lefleur, Acute Treatment Unit Director Doe, Administrator Oliveaux, Dr. Gamble, Officer Doe, and EMT Doe Damages;[16]

---

[10] *See* Rec. Docs. 61-1, 61-2 (SEALED).
[11] Rec. Doc. 1.
[12] Rec. Doc. 13, pp. 17–19.
[13] *Id.* at pp. 19–20.
[14] *Id.* at pp. 20–22.
[15] *Id.* at pp. 22–23.
[16] *Id.* at pp. 23–25.

- Count 6: Injunctive Relief under the ADA against the DPSC and Warden Hooper, in his official capacity;[17] and

- Count 7: Injunctive Relief under the Fourteenth Amendment Equal Protection Clause against the DPSC and Warden Hooper, in his official capacity.[18]

Defendants now move for summary judgment on Folks's claims.[19]

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"[21]

However, "the movant 'need not negate the elements of the nonmovant's case.'"[22] That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial."[23] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[24]

---

[17] *Id.* at p. 25.
[18] *Id.* at pp. 25–26.
[19] Rec. Doc. 55.
[20] Fed. R. Civ. P. 56(a).
[21] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).
[22] *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))).
[23] *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.") (emphasis in original)).
[24] *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the movant carries the burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"[25] The non-movant's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[26]

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[27] Additionally,

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.[28]

### III. LAW AND ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action under § 1983 or any federal law until he exhausts administrative remedies.[29] 42 U.S.C. § 1997e(a) states that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."[30] The Supreme Court has

---

[25] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted).
[26] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).
[27] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up).
[28] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).
[29] 42 U.S.C. § 1997e(a).
[30] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

made clear that exhaustion is mandatory.[31] Moreover, the Fifth Circuit instructs that the exhaustion requirement must be completed prior to filing suit, stating:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.[32]

In Louisiana, there is a "two-step Administrative Remedy Procedure (ARP)" that an inmate must follow to exhaust administrative remedies before filing suit in Federal Court:[33]

> An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to the warden. [La. Admin. Code, Title 22, pt. I,] § 325(G)(1)(a)(i). An ARP screening officer screens the inmate's request and either accepts the request into the first-step or rejects it for one of ten enumerated reasons. *Id*. at § 325(I)(1)(a)(i)–(ii). Once the request is accepted, the warden must respond on a first-step response form within forty (40) days of receipt of the request. *Id*. at § 325(J)(1)(a)(ii). If the inmate is not satisfied with the response, he may proceed to the second-step of the ARP process by appealing to the Secretary of the Department of Corrections ("DOC Secretary") using a space provided on the first-step response form. *Id*. at § 325(J)(1)(b)(i)–(ii). The DOC Secretary is required to issue a response within forty-five (45) days from the date the request is received utilizing a second-step response form. *Id*. at § 325(J)(1)(b)(ii). The expiration of any response time limits entitle the inmate to move to the next step in the process. *Id.* at § 325(J)(1)(c)."[34]

"In order to ensure their right to use the formal procedure, a request to the warden [must] be made in writing within a 90 day period after an incident has occurred."[35]

---

[31] *Id*. at 524.
[32] *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Wherein the Fifth Circuit tacitly overruled their decision in *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998) after reviewing the Supreme Court decisions in *Woodford v. Ngo*, 548 U.S. 81 (2006) and *Jones v. Bock*, 549 U.S. 199 (2007).
[33] *Abbott v. Babin*, 2016 WL 3951625, at *3 (M.D. La. July 21, 2016) (citing La. Admin. Code, Title 22, pt. I, § 325 (2013)).
[34] *Id.*
[35] La. Admin. Code, Title 22, pt. I, § 325(G)(1). The Court notes that with respect to the ADA, "[a] request for accommodation under the [ADA] made using the administrative remedy procedure process and the resolution of the offender's request shall be deemed to be exhaustion of the administrative procedure." *Id.*

Exhaustion is an affirmative defense; thus, the "[d]efendant bears the burden of demonstrating that [p]laintiff failed to exhaust available remedies."[36] "When courts rule on exhaustion on the basis of evidence beyond the pleadings, the nonmoving party should be granted the protections of Rule 56."[37]

During Folks's time at LSP, he initiated Louisiana's administrative grievance process four times through filing the following ARPs: ARP 2021-2850,[38] ARP 2021-2851,[39] ARP 2021-0859,[40] and ARP 2022-1428.[41] Defendants argue that Folks did not exhaust administrative remedies as to his claims presently before the Court, and thus, summary judgment is warranted in their favor.[42] Folks opposes Defendants' motion, arguing that he did exhaust administrative remedies, but even if he did not, Louisiana's administrative grievance process was not "available" to him within the meaning of the PLRA.[43] The Court will address each ARP in turn.

### A. ARP 2021-2850

Folks wrote ARP 2021-2850 on November 9, 2021.[44] This ARP is marked "received" on November 12, 2021.[45] Folks included a "reason" subject-line in the heading of ARP 2021-2850, which states: "Records Mental – Medical – Photos in regard to self[-]harm. All request below are all relevant to my defense of pending charge."[46] He

---

§ 325(3)(a)(v). However, "[t]he initiation of the process and deadlines and time limits stated in the administrative remedy procedure remain applicable." *Id.*
[36] *Douglas v. Anderson*, 2017 WL 4052158, at *2 (M.D. La. Sept. 13, 2017).
[37] *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010).
[38] Rec. Doc. 55-12.
[39] Rec. Doc. 55-13.
[40] Rec. Doc. 55-14.
[41] Rec. Doc. 55-15.
[42] Rec. Doc. 55-1, pp. 10–13.
[43] Rec. Doc. 70, pp. 33–36.
[44] Rec. Doc. 55-12, p. 3.
[45] *Id.*
[46] *Id.*

goes on to request "certain copies of [his] own mental health and medical records to include copies of pictures taken by both security and medical staff[] and has not yet been provided with requested records."[47] In his request, Folks explains that "[t]he reason [he] must obtain copies of said records is vital to [his] defense of the charge of self-mutilation by prisoner pending in court of St. Mary Parish."[48] He further provides that "[t]he records will prove that [he is] on strong psyiciatric[sic] medication that is specifically to help manage [his] mental condition, severe self[-]mutilation."[49] Folks ends ARP 2021-2850 by reiterating that he needs the requested information "[i]n order to prove in court that self[-]harm had occured[sic] and the severity of the self[-]harm in fact happened . . . ."[50]

It is undisputed that ARP 2021-2850 was properly exhausted.[51] The parties dispute, however, whether ARP 2021-2850 put Defendants on notice of the allegations and claims asserted in this suit.[52] "Louisiana's ARP procedure does not require a specific level of detail in the inmate's letter."[53] "As a general matter[,] courts typically use a standard according to which a grievance should give prison officials 'fair notice' of the problem that will form the basis of the prisoner's suit."[54] "Courts are to interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'"[55] "The amount of information

---

[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *See* Rec. Doc. 55-1, p. 13; Rec. Doc. 70, p. 33.
[52] *See* Rec. Doc. 55-1, p. 13; Rec. Doc. 70, p. 33.
[53] *Rebaldo v. Jenkins*, No. 08-4062, 2011 WL 2293129, at *2 (E.D. La. June 8, 2011). *See also* La. Admin. Code, Title 22, pt. I, § 325(G)(1)(a)(iii) ("Original letters or requests to the warden should be as brief as possible. Offenders should present as many facts as possible to answer all questions (who, what, when, where and how) concerning the incident. If a request is unclear or the volume of attached material is too great, it may be rejected and returned to the offender with a request for clarity or summarization on one additional page.").
[54] *Rebaldo*, 2011 WL 2293129, at *2 (citations omitted).
[55] *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (quoting *Porter,* 534 U.S. at 525)).

necessary will depend to some degree on the type of problem about which the inmate is complaining."[56]

The Court finds that ARP 2021-2850 did not put prison officials on notice of the allegations and claims in this suit. ARP 2021-2850 is instead a records request to aid Folks in his defense against charges pending in St. Mary's Parish. Again, "[t]he primary purpose of exhaustion is to give prison officials notice of the problem so that remedial measures can be taken."[57] Like in the Eastern District of Louisiana's decision in *Rebaldo v. Jenkins*, ARP 2021-2850 failed to put prison officials on notice that there were issues with respect to Folks's incarceration at LSP, "and an appropriate ARP might very well have resolved such . . . issue[s] without the need for subsequent litigation."[58] Thus, Folks did not exhaust administrative remedies as to his claims presently before the Court through ARP 2021-2850.

### B. ARP 2021-2851

Folks wrote ARP 2021-2851 on November 9, 2021.[59] This ARP is marked "received" on November 12, 2021, and includes a "reason" subject-line, which states: "copy of rap sheet parole hold and reasons for hold and copy of parole compliance early release date."[60] In LSP's First Step response, it provided Folks his detainer letter and list of pending charges.[61] LSP also explained that his parole violation will depend on the outcome of his pending charges in St. Mary's Parish.[62] Folks did not move to Step Two

---

[56] *Id.* (citing *Johnson*, 385 F.3d at 516).
[57] *Id.* at *3.
[58] *Id.*
[59] Rec. Doc. 55-13, p. 12.
[60] *Id.*
[61] *Id.* at pp. 4–11.
[62] *Id.* at p. 4.

of Louisiana's administrative grievance process.[63] Considering the foregoing, the Court finds that Folks did not exhaust ARP 2021-2851. Moreover, this ARP is a records request unrelated to Folks's claims before the Court. Accordingly, Folks did not exhaust administrative remedies through ARP 2021-2851.

### C. ARP 2022-0859

Folks wrote ARP 2022-0859 on April 18, 2022, and this ARP is marked "received" on April 20, 2022.[64] Folks's stated "reason" for filing ARP 2022-0859 is "unsafe and unsanitary environment due to leaking and cracked ceiling TU LTOC."[65] Folks voluntarily withdrew ARP 2022-0859 on May 14, 2022.[66] He signed and fingerprinted his withdrawal form, stating that his withdrawal request was made "voluntarily" and of his "own free will, without coercion and without promise of reward."[67] However, Folks attests in his declaration that "[i]n his experience at LSP, prison officials frequently pressured inmates not to file or to withdraw ARPs."[68] He notes that "[p]rison staff [had] pressured [him] not to file or to withdraw ARPs" and that "[s]ometimes, a trusted official like a chaplain or pastor would influence inmates to drop ARPs in exchange for some privilege or benefit."[69]

Folks further attests that he withdrew ARP 2022-0859 out of fear that "the shift supervisor who would be held responsible for [his] cellblock would start withholding the few privileges he had helped [Folks] get while [he] was on isolation and suicide watch."[70] According to Folks, "the shift supervisor and [him] had also developed a good rapport[,]

---

[63] *See generally* Rec. Doc. 55-13.
[64] Rec. Doc. 55-14, p. 3.
[65] *Id.*
[66] *Id.* at p. 4. Folks's withdrawal is marked received on May 27, 2022. *Id.*
[67] *Id.*
[68] Rec. Doc. 70-18, ¶ 15.
[69] *Id.*
[70] *Id.* at ¶ 16.

and [Folks] did not want [his] ARP to ruin one of the few relationships [he] had formed after being isolated for over a year at that point at LSP."[71] He does not attest that any prison official threatened or coerced him into withdrawing ARP 2022-0859.

Folks argues that regardless of him withdrawing ARP 2022-0859, he was not required to exhaust administrative remedies as to his cell-condition grievances.[72] He asserts that because there is no DPSC policy against pressuring prisoners to withdraw and/or not file ARPs, he could not pursue administrative remedies out of fear of retaliation.[73] As such, administrative remedies were not "available" to him within the meaning of the PLRA, thus relieving him from the Act's exhaustion requirement.[74]

The PLRA's exhaustion requirement hinges on the availability of administrative remedies.[75] Although a grievance procedure may be officially on the books, such remedies may be deemed unavailable if, in practice, it prevents an inmate from seeking redress.[76] As the United States Supreme Court explained in *Ross v. Blake*, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"[77] The Court recognized that a grievance procedure is unavailable when it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."[78]

---

[71] *Id.*
[72] Rec. Doc. 70, pp. 34–35.
[73] *Id.* at p. 35.
[74] *Id.*
[75] *Ross v. Blake*, 578 U.S. 632, 633 (2016).
[76] *Id.*
[77] *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).
[78] *Id. See also Curry, Jr. v. Miss. Dep't of Corr.*, 586 F. App'x 165, 166 (5th Cir. 2014) ("We have excused the exhaustion requirement if prison officials have ignored or interfered with an inmate's pursuit of his administrative remedies." (citing *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir. 1982))).

The *Ross* court outlined three limited circumstances in which administrative remedies are deemed unavailable under the PLRA: (1) when the administrative procedure "operates as a simple dead end — with officers unable or unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is so opaque that it is "essentially unknowable" and "no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[79]

A division of this Court addressed exhaustion and threats of adverse consequences should a prisoner fail to withdraw an ARP in *Robinson v. LeBlanc*.[80] In finding that administrative remedies were available to a prisoner despite threats of retaliation, the Court relied on the fact that "the Fifth Circuit has found that such a threat is not sufficient to be considered one of the rare circumstances where exhaustion is not required."[81] So too is the case here, especially when Folks did not receive threats as to ARP 2022-0859. He instead withdrew ARP 2022-0859 out of fear of adverse consequences based on his "experience at LSP."[82] Moreover, he knowingly and voluntarily signed and fingerprinted his withdrawal form stating that his withdrawal request was made "voluntarily" and of his "own free will, without coercion and without promise of reward."[83] Likewise, the record reflects that Folks filed multiple ARPs during his time at LSP, further undermining his claim of adverse consequences. Accordingly, the Court finds

---

[79] *Ross*, 578 U.S. at 643–44.
[80] *Robinson v. LeBlanc*, No. 18-491, 2019 WL 13255449, at *3 (M.D. La. Oct. 4, 2019), report and recommendation adopted, No. 18-491, 2019 WL 13255445 (M.D. La. Oct. 29, 2019).
[81] *Id.* (citing *Zebrowski v. U.S. Bureau of Prisons*, 558 F. App'x. 355, 360 (5th Cir. Feb. 27, 2014) and explaining that "the Fifth Circuit held that a defendant's threats to transfer an inmate to a higher security prison if the inmate did not withdraw his grievances were insufficient to excuse plaintiff from exhausting his administrative remedies").
[82] *See* Rec. Doc. 70-18, ¶¶ 15–16.
[83] Rec. Doc. 55-14, p. 4.

that Folks was required to exhaust administrative remedies as to his grievances in ARP 2022-0859, and by withdrawing ARP 2022-0859, he failed to do so.

### D. ARP 2022-1428

Folks wrote ARP 2022-1428 on July 22, 2022.[84] ARP 2022-1428 is marked received on July 27, 2022.[85] Folks requests relief as to "cruel and unusual punishment by use of force by restraints" and explains that his "complaint is in reference to being chained to a bed due to mental illness of self[-]mutilation . . . between April and lat[e] August 2021."[86] ARP 2022-1428 was rejected on July 28, 2022, because Folks did not file it within 90 days of the complained of incident.[87]

Folks argues that he is excused from the PLRA's exhaustion requirement because he suffered from mental and physical injuries that prevented him from timely complying with Louisiana's administrative grievance process.[88] He contends that "Fifth Circuit precedent excuses exhaustion where a prisoner's mental or physical injury causes untimely filing, the prisoner still submits the grievance, and the grievance is rejected as untimely."[89] Thus, Folks asserts that he is excused from the PLRA's exhaustion requirement since "he 'pursued his administrative remedies when he was physically and mentally capable of doing so[,]' 'filed an untimely grievance,' and LSP 'rejected such grievance for untimeliness.'"[90] Folks also argues that Louisiana's ARP system itself was "a simple dead end" because he was a suicide risk and was thus denied access to pens,

---

[84] Rec. Doc. 55-15, p. 3.
[85] *Id.*
[86] *Id.*
[87] *Id.* at p. 2 ("Your request has been rejected for the following reason(s): THE DATE OF INCIDENT IS MORE THAN 90 DAYS PAST DUE SO THEREFORE YOUR ARP IS BEING REJECTED DUE TO IT BEING UNTIMELY FILED. ARP'S MUST BE FILED WITHIN 90 DAYS OF THE INCIDENT.")
[88] Rec. Doc. 70, p. 35.
[89] *Id.* (citing *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003)).
[90] *Id.* at p. 36 (quoting *Foy v. LDPSC, et al.*, No. 17-400 (M.D. La. July 23, 2018); Rec. Doc. 23, p. 8).

pencils, and paper.[91] "It was 'only with the assistance of sympathetic inmates' who let him borrow pen and paper or helped him write ARPs" that was he able to file ARP 2021-2850, ARP 2021-2851, and ARP 2022-0859.[92]

In reply, Defendants argue that Folks's "claim is belied by the fact that [he] filed two ARPs on November 9, 2021[,] requesting his medical records to assist with his defense of pending charges in St. Mary's Parish[] and requesting his rap sheet."[93] Defendants note that "these ARPS were filed within 90 days of August 17, 2021," which was the last day that Folks was on suicide watch."[94] Thus, Folks "had the means and capacity to exhaust his administrative remedies[] but failed to do so."[95]

The Fifth Circuit in *Days v. Johnson* held that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance."[96] However, the Fifth Circuit "emphasize[d] that [its] holding is limited to the narrow facts of [that] case."[97] In *Days*, a plaintiff broke his hand and was unable to write.[98] Once his hand healed, he submitted an administrative grievance, but the grievance was rejected as untimely.[99] The present case is distinguishable.

---

[91] *Id.*
[92] *Id.* (citing Rec. Doc. 70-18, ¶ 17).
[93] Rec. Doc. 75, p. 4.
[94] *Id.*
[95] *Id.*
[96] *Days*, 322 F.3d at 868.
[97] *Id.*
[98] *Id.* at 865.
[99] *Id.*

Here, Plaintiff was taken off suicide watch on August 17, 2021,[100] and within 90 days, he filed two ARPs.[101] He filed a third ARP on April 18, 2022.[102] It was not until over 11 months after being taken off suicide watch that Folks filed ARP 2022-1428. Like in *Ferrington v. Louisiana Department of Corrections*—where the Fifth Circuit found that a plaintiff's blindness did not prevent him from exhausting administrative remedies when his "blindness clearly did not prevent him from filing [a] § 1983 action, from appealing a disciplinary hearing, or from filing prison grievances after his transfer to another facility"[103]—Folks was able to timely exhaust administrative remedies. He likewise had access to writing materials, as evidenced by him filing ARPs 2021-2850, 2021-2851, and 2022-0859. Nonetheless, lack of access to writing materials does not deem an administrative grievance process unavailable when inmates are allowed to seek assistance in carrying out the process,[104] just as Louisiana's administrative grievance process allows.[105]

For these reasons, the Court finds that there is no issue of fact as to Louisiana's administrative grievance process being "available" to Folks. Folks was mentally and physically able to timely file ARPs and had the means to do so. Therefore, the Court must follow the directive of the Fifth Circuit and "take a 'strict approach' to [the PLRA's] mandatory exhaustion requirement, 'under which prisoners must not just substantially comply with the prison's grievance procedures but instead must "exhaust available

---

[100] Rec. Doc. 61-1, pp. 13–14 (SEALED).
[101] Rec. Docs. 55-12, 55-13.
[102] Rec. Doc. 55-14.
[103] *Ferrington v. La. Dep't of Corr.*, 315 F.3d 529, 532 (5th Cir. 2002).
[104] *See, e.g.*, *Montgomery v. Barr*, 507 F. Supp. 3d 711, 724–25 (N.D. Tex. 2020).
[105] *See* La. Admin. Code, Title 22, pt. I, § 325(F)(3)(a)(i)(c).

remedies properly.'"'"[106] Any other result would be deemed a "special circumstance" exception to the PLRA's exhaustion requirement, which the Supreme Court specifically rejected in *Ross*.[107] Since Folks failed to exhaust administrative remedies before filing suit in this Court, Defendants' Motion for Summary Judgment[108] is granted, and Folks's claims are dismissed with prejudice.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment[109] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this __1st__ day of __December__, 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[106] *Donahue v. Wilder*, 824 F. App'x 261, 266 (5th Cir. 2020) (quoting *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010))).
[107] *Ross*, 578 U.S. at 641.
[108] Rec. Doc. 55.
[109] *Id.*